<div style="margin-left:left">MASON<br>
v.<br>
POULALLIER</div>

It is therefore decreed, that the judgment be amended by striking out the allowance of $100 for counsel fees, and by allowing as damages under the statute the sum of $273 95, and that, so amended, the judgment be affirmed —the costs of the appeal to be paid by the appellee, *Sarah Poulallier.*

---

## THE STATE *v.* THE JUDGE OF THE SECOND DISTRICT COURT OF NEW ORLEANS.

A mandamus will not lie where the party has a remedy by appeal.

ON an application for a *mandamus* to the Second District Court of New Orleans, *Lea,* J.  *Livingston,* for the application.

SLIDELL, C. J. It appearing to the court that no sufficient cause for a *mandamus* having been shown, the party having a remedy by appeal.—See *Succession of Macarty,* 2d Ann. 950.

It is therefore ordered, adjudged and decreed, that the application for a writ of *mandamus* in this case be refused at the appellant's costs.

---

## STATE *v.* C. RAMOS—BALDWIN, Relator.

Under the Consolidation Act of 1852, writs of *quo warranto* may issue at any time, and at the instance of any citizen to try the right of any Mayor, Recorder, or other officer of the city of New Orleans, to the office which he holds.

A resolution of the late Board of Assistant Aldermen was adopted, declaring "that *Clement Ramos,* Recorder of the Second District of this city be, and he is hereby presented to the Board of Aldermen for impeachment, upon the following charges," &c.—which were specified. *Held:* That from the time of the adoption of the resolution an impeachment was *pending* in the sense of the law.

The Act of Consolidation which confers upon the Board of Aldermen the sole power to try all impeachments, is not unconstitutional.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J.
*Schmidt,* for *Baldwin.*    *C. Dufour* and *P. E. Bonford,* for respondent and appellant.

SPOFFORD, J. (SLIDELL, C. J. and OGDEN, J., absent.) At the relation of *Alexander Baldwin,* styling himself Captain of the Police of the Second District, a writ of *quo warranto* was sued out from the Sixth District Court, upon the 14th of April last, citing *Clement Ramos* to show cause why he should not cease to exercise the functions of Recorder of the Second District of New Orleans, until an impeachment preferred against him by the Board of Assistant Aldermen should be finally decided.

In his answer filed on the 17th of April, the defendant admitted that certain proceedings were had by the late Board of Assistant Aldermen, the object of which was to cause him to be impeached before the Board of Aldermen for alleged offences; but he denied that those proceedings amounted to an impeachment, and averred, that before they matured into a formal impeachment,

the Board of Assistant Aldermen, who commenced them, ceased to exist, whereby the proceedings fell; he further averred, that under the Constitution and laws, there was no power vested in the Board of Assistant Aldermen to impeach him, or in the Board of Aldermen to try him for the alleged commission of any offences in the exercise of his office of Recorder; he finally averred that the proceedings in the pretended impeachment were irregular, null and void, for want of a sworn accusation specifying his offences, for want of citation and opportunity to confront his accuser and the witnesses, and to offer witnesses in his defence before the Board of Assistant Aldermen; and because the evidence was not taken down in writing.

Upon these issues, the cause was tried and decided adversely to the defendant, who has appealed.

No question is made touching the legality of this proceeding by *quo warranto* to test the issues involved. Sec. 40 of the Act to consolidate the city of New Orleans (Session Acts 1852, p. 55) provides, that the right of any Mayor, Recorder, or other officer of the city of New Orleans to fill the office held by him (*de remplir la place qu'il occupe*) may be tested, at any time, by any citizen, by a writ of *quo warranto*, which shall be tried as summarily as possible, both in the inferior and appellate courts." The remedy of *quo warranto* is not limited strictly to the cases put in the Code of Practice. In *Reynolds* v. *Baldwin*, 1 Ann. 165, it was held to be the proper remedy for the usurpation of a franchise, as well as of an office. Here, it is alleged, that the defendant claims, without authority of law, to exercise the functions of Recorder, after he has been suspended from office by an impeachment. We think the plaintiff has pursued the appropriate remedy.

The argument in this court has been restricted to four points, which we will examine in their order:

1. It is contended by the appellant, that a mere resolution to impeach, is not an impeachment. For the purposes of the present case, that may be conceded, for there is something more than a mere resolution to impeach in the proceedings of the Board of Assistant Aldermen.

It appears of record that a special committee, to whom a communication of certain persons praying for the impeachment of the defendant had been referred, made a report, in which they stated that they had examined a great number of witnesses, and that certain charges, which they set forth with sufficient distinctness, had been proven; whereupon, they reported that, in their opinion, the said defendant should be impeached, and the necessary resolution for his impeachment and suspension from office were reported.

On motion, the report and resolution of suspension were adopted by a vote of ten to five.

The following resolution was then adopted:

"Resolved, That *Clement Ramos*, Recorder of the Second District of this city be, and he is hereby presented to the Board of Aldermen for impeachment upon the following charges," &c. Then follows a specification of the articles of impeachment. The defendant's answer admits that he was aware of these proceedings such as they were, and they were duly promulgated on the 10th of April, several days before the *quo warranto* was applied for.

We are of opinion, that from that time an impeachment was pending in the sense of the law. Sec. 21 of the Consolidation Act (see Acts of 1852, p. 47) declares, that " the Board of Assistant Aldermen shall have the sole power of

impeachment of city officers, not otherwise provided for; and, pending such impeachment, and until the final disposition thereof, the party impeached shall not exercise any of the functions of his office."

2. But it is urged that the Act of Consolidation in conferring upon the Board of Aldermen "the sole power to try all impeachments," transcended the authority given to the Legislature by the Constitution. The argument is, that the power of impeachment is a judicial power, and could not be conferred upon a legislative or municipal body.

But, by the terms of the section, (Sec. 21) which confers the power, "judgment in cases of impeachment, shall not extend further than removal from office and disqualification to hold any office *under the city charter:* but the party convicted shall be liable to indictment, trial and punishment according to law." We think that, in this enactment, the Legislature only gave to the city government, such powers as are proper for its police and good administration, and that no article of the Constitution was invaded thereby. Article 128, of the Constitution of 1845, (preserved in Article 124 of the present Constitution) provided that the Legislature may vest in the Aldermen such criminal jurisdiction as may be necessary for the punishment of minor crimes and offences, *and as the police and good order of said city may require.*

3. Again, it is said that if the 21st Section of the Consolidation Act, were a proper exercise of legislative power, the Recorder is not a city officer within the fair meaning of the provisions of that section.

Section 4, of the Consolidation Act, vests the executive power of the city of New Orleans, in one Mayor, three Recorders, &c. The fact that the Recorders, as an incident to their office, and the better to enable them to discharge its duties, are commissioned as Justices of the Peace, does not divest them of their character as city officers.

4. Lastly, it is contended that the Board of Assistant Aldermen, should have proceeded according to the formalities prescribed by the Act of 1826, (Ses. Acts, p. 204,) and, it not appearing that they did so, the whole proceedings should be treated as absolutely null.

That act is expressly limited to accusations against public officers before the Legislature. It would be straining our powers to say what the Legislative Department has not chosen to say, that the forms therein prescribed, shall be pursued in impeaching city officers, under the 21st Section of the Consolidation Act. The sole power of impeachment is confided to the Board of Assistant Aldermen, the sole power of trying the impeachment to the Board of Aldermen, the right of appeal to this court, is not given.

We will not do indirectly what we cannot do directly; and we disclaim any general right of supervision over the boards, in the exercise of the impeaching power which the law has entrusted solely to their sound discretion. If they err, they are responsible to the public, by whom they are elected.

We are unable to say that the proceedings as they stand of record, are absolutely null and void upon their face.

The judgment, is, therefore, affirmed, with costs.