THE STATE OF KANSAS, *ex rel. the County Attorney of Shawnee County*, v. THE CITY OF TOPEKA.

INTOXICATING LIQUOR; *Unlawful License; Quo Warranto.* Incorporated cities in this state have no power to license or impose a license tax on the business of selling intoxicating liquors contrary to the provisions of the constitution and the statute; and if a city assumes such unlawful corporate power, it may be ousted from the exercise thereof by proceedings in the nature of *quo warranto.*

*Original Proceedings in Quo Warranto.*

THE petition in this case, filed June 26, 1883, is as follows:

"A. H. Vance, county attorney of the county of Shawnee, in the state of Kansas, who prosecutes for said state, comes now here unto the supreme court of the state of Kansas, and in behalf of said state gives the said court here to understand and be informed that:

"1. The said city of Topeka is and for more than two years last past has been a city of the first class, which previously had been a city of the second class, and having no other corporate rights, privileges or powers than those granted by the general laws of said state concerning cities of the first class, and said city is situated within said county of Shawnee; that for the space of more than two years past said city has exercised and still does exercise a certain corporate power not conferred upon it by law, to wit: the corporate power of licensing and authorizing the keeping and maintaining of tippling houses and places within said city for the purpose of selling and keeping for sale habitually and as a business, of brandy, whisky, rum, gin, ale, lager beer, porter and other intoxicating liquors as beverages, and not for medical, mechanical nor scientific purposes, and without any permit to sell intoxicating liquors at said places, nor by the owners or keepers thereof, having been issued by the probate judge of Shawnee county.

"2. The county attorney aforesaid, on behalf of said state, gives the court here further to understand and be informed, that the said city of Topeka, being a city of the first class as aforesaid, for the space of more than two years last past has exercised and still does exercise a certain corporate power not conferred upon it by law, to wit: the corporate power of imposing and collecting a license tax upon the business of selling and keeping for sale intoxicating liquors within said city to be used as beverages, and not for medical, mechanical nor scientific purposes, and without any permit for the sale of intoxicating liquors having been issued by the probate judge of said Shawnee county to the person so licensed and taxed.

"3. And the county attorney aforesaid, on behalf of said state, gives the court here to further understand and be informed, that said city of Topeka, being a city of the first class as aforesaid, for the space of more than two years last past has exercised and still does exercise a certain corporate power not conferred upon it by law, to wit: the corporate power of making, entering into and carrying out agreements and contracts with such persons as the officers of said city may choose, by which the said persons have been and are granted the privilege of selling and keeping for sale within said city, and of keeping and maintaining within said city tippling houses and places for said selling and keeping for sale habitually and as a business, intoxicating beverages, to

be at said places drunk as beverages, and not to be used for medical, mechanical nor scientific purposes, and without any permit from the probate judge of the said Shawnee county, in consideration that such persons would and will, at stated intervals, pay to said city a stipulated fine, to be imposed by the police court of said city on each of said persons at said stated times, in simulated prosecutions to be brought against each of them by said city at said stated times; said fines so imposed and paid, to be paid to and received by said city as a license tax for the privilege of carrying on said business, in full consideration of all violations of the ordinances of said city involved in making such sales, and in keeping and maintaining said places, and in carrying on said business, and of all penalties incurred thereunder.

"4. And the said county attorney, on behalf of said state, gives the court here to further understand and be informed, that said city of Topeka, being a city of the first class as aforesaid, for the space of more than two years last past has exercised and still does exercise a certain corporate power not conferred upon it by law, to wit: the corporate power of entering into and carrying on an agreement with any and all persons desiring to keep and maintain in said city places for the sale of intoxicating liquors as beverages, and for other than medical, mechanical and scientific purposes, in violation of the act of the legislature of the state of Kansas, entitled 'An act to prohibit the manufacture and sale of intoxicating liquors, except for medical, scientific and mechanical purposes, and to regulate the manufacture and sale thereof for such excepted purposes,' approved February 19, 1881; that for certain sums, to be paid to said city by such persons in fines, as forfeited bail, or otherwise as said city might prescribe, said city would and will not cause nor permit said act of the legislature to be enforced nor regarded as against such persons by any officer or policeman of said city; nor permit any prosecution, arrest nor complaint to be instituted or made under said act, nor any information which might cause, induce or aid any such prosecution by the state, to be given by any officer or policeman of said city.

"Wherefore said county attorney, on behalf of said state, prays that the said city may be required to answer to said matters; that it may be ousted forever from the exercise of said usurped corporate power; and that such other and further relief may be given to said state against said unlawful acts as may be proper."

To this petition the defendant filed a demurrer, embracing every statutory ground.    The opinion herein was filed at the November, 1883, session of the court.

*G. C. Clemens*, for The State.

*A. B. Quinton*, and *J. D. McFarland*, for the defendant.

The opinion of the court was delivered by

HORTON, C. J.: This is an information in the nature of *quo warranto*, brought by the county attorney of Shawnee county in the name of the state, to oust the city of Topeka from exercising the power of licensing and imposing taxes or charges on persons for selling intoxicating liquors within the limits of the city, contrary to the constitution and statute of the state.    To the petition the city demurs, and by so doing raises the question whether this proceeding can be maintained for the purpose of granting the relief prayed for.    No claim is set up that the city is authorized by its charter, or otherwise, to exercise the powers assumed by it; nor is any attempt made to justify the city in its illegal action; nor is any suggestion made that the matters set forth in the petition are not the acts of the corporation.    On the other hand, it is conceded by counsel representing the city, that the state has the right to maintain this action, provided the alleged corporate right, which it complains has been usurped, is in reality a corporate right or franchise within the meaning of the law. (Code, § 653.)

The contention however is, that the illegal licensing by the city of the sale of intoxicating liquors contrary to law, and the exaction of taxes or charges from persons engaged in the sale thereof, is not a corporate franchise.    The argument in support of this proposition is, that it is essential to a franchise that it be capable of being derived from the law of the state; that it must be something which is within the prerogative of the state to grant, and which when granted may be lawfully exercised; that as the sale of intoxicating liquors as a beverage is prohibited by the constitution, the legislature cannot

grant such a franchise; therefore it is not and cannot be a franchise derived from the law, or one which can subsist in the hands of any person by virtue of a legislative grant.

To the argument presented, we cannot fully assent. Franchise is a word of extensive signification: it is a liberty or privilege. In England, it was the powers and privileges inherent in the crown which subsisted in the hands of a subject by grant from the crown. It was therefore defined to be a "royal privilege in the hands of a subject." In this country, the people not only have all the rights and privileges of English subjects, but they have succeeded to all the rights and privileges of the crown. In the state, the sovereign power is the people. "All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit." (Bill of Rights, § 2.) While the constitution of the state is the absolute rule of government and decision for all the departments and officers of the state in respect to the points covered by it, which must control until it is changed by the authority which established it, yet, even thereunder, the legislature is not the sovereign authority, and though vested by it with the exercise of one branch of sovereignty, it is, nevertheless, in wielding it, hedged in on all sides by restrictions. In this state, by the adoption of the prohibition amendment of 1880, the people saw fit to restrict the sale of intoxicating liquors to medical, scientific and mechanical purposes. Prior to the adoption of this amendment, the legislature had unlimited authority to license and regulate the sale of intoxicating liquors for all purposes. By the amendment, the people have denied to the legislature the power to grant the franchise or privilege of selling intoxicating liquors as a beverage; therefore this franchise or privilege cannot be exercised in this state by a corporation or an individual, by virtue of a legislative grant.

If it cannot be exercised with a legislative grant, can it be exercised without one, and in violation of the expressed provisions of the constitution and of the statute? The people of

the state, as the sovereignty, have decreed that this franchise or privilege shall not be exercised under any circumstances. Suppose, in England, after the successful prosecution of a proceeding against a corporation to resume a franchise of the crown which had been usurped, the corporation should attempt to exercise again the same franchise: would it be any justification to answer that the crown had revoked the franchise and annulled the grant under which it was held, and as it was no longer a privilege in the hands of a subject, it could be exercised at pleasure by any corporation or individual? The inquiry suggests its own answer. Although the people of the state, in their sovereign capacity, have revoked the privilege of selling intoxicating liquors as a beverage, they do not intend thereby that municipal corporations or any tribunal shall assume the power to transfer to others this privilege. The people of the state possessed all legislative power originally. In the adoption of the constitution, they committed to the legislature the franchise or privilege of licensing the sale of intoxicating liquors. At the time of the adoption of our first code, the territorial legislature had the right to grant this franchise. At the adoption of the existing code, (sections of which relating to proceedings by information concerning offices and franchises, are referred to by the counsel for the city,) the legislature had likewise the power to grant this franchise; and therefore at that time, licensing and imposing a tax on the business of selling intoxicating liquors was a franchise within the most technical definition of the term. By the amendment of 1880, the people withdrew from the legislature the authority conferring this franchise or privilege, except for specified purposes. It may be said that this franchise or privilege, which existed at the adoption of the code, has been revoked by the people — the source of all political power — and is withheld by them until they in their wisdom shall, under the provisions of the constitution, so change that instrument as to again confer upon the legislature the power possessed by it prior to the adoption of the amendment.

Again, notwithstanding the licensing by a city of the sale

of intoxicating liquors contrary to law and the exaction of
taxes or charges therefor is not a power which the state,
through the legislature, can authorize to be exercised by a
corporation, nevertheless it is apparent from the authorities
that the exercise of such a power is regarded as the exercise
of a public trust or privilege, and being without authority,
therefore subject to ouster by a proceeding of this character.
Even in England, under the common law, informations in
the nature of *quo warranto* were granted in cases where the
public were interested, in which it would be difficult to show
that any prerogative or franchise of the crown had been in-
vaded, as in the case of the mayor and common council of
Hertford, who took upon themselves to make strangers free
of the corporation without being qualified according to the
charter.   In the case of *The King v. Nicholson* and others,
it appeared that by a private act of parliament for enlarging
and regulating the port of Whitehaven, several persons were
appointed trustees, and a power was given them to elect others
upon vacancies by death, or otherwise.   The defendants took
upon themselves to act as trustees without such election; and
upon motion for an information of *quo warranto* against them,
it was objected by the counsel for the defendants that the
court never granted any such informations but in cases where
there was a usurpation of some franchise of the crown;
whereas in that case the king alone could not grant such
powers as were exercised by the trustees, and that this fran-
chise was not a prior franchise of the crown.   To this it was
answered by the court that the rule was laid down too gen-
eral, for that informations had been constantly granted when
any new jurisdiction or public trust was exercised without
authority. (1 Strange, 303; *Rex v. Boyles*, 2 id. 836.)

In *The State v. City of Cincinnati*, 20 Ohio St. 18, an in-
formation in the nature of *quo warranto* was filed to oust the
city from the exercise of corporate powers over extensive an-
nexations of outlying territory, claimed by the city to have
been made to it in accordance with the provisions of a spe-
cial act of the legislature of Ohio. . Judgment of ouster was

granted. The court held that as the special act attempted to confer upon the corporation of the city of Cincinnati additional corporate powers, the act was unconstitutional and void. The legislature of Ohio had no authority to confer the power exercised, and as the city exercised power not conferred by law, and which could not be conferred by any special act, it was ousted from the further exercise of such power. In *The State v. City of Cincinnati*, 23 Ohio St. 445, proceedings were instituted to oust the city from exercising corporate power in the control of a hospital. The alleged right of the city to exercise the power complained of was founded upon a special act of the legislature. This power was explicitly denied to the legislature by the constitution of Ohio, from being conferred by special act, therefore it was held that the city was not invested with any power or franchise in relation to the hospital. Judgment of ouster was therefore entered. In both of these cases the corporate power unlawfully exercised was not conferred, and could not be conferred upon any corporation by the legislature, in the mode attempted. (See also *People v. Ins. Co.*, 15 Johns. 357; *Commonwealth v. Arrison*, 15 Serg. & R. 127.)

The city of Topeka possesses no powers not conferred upon it, either expressly or by fair implication, by the law under which it is incorporated. It is confessed that there has not been conferred upon it, expressly or by implication, any power to license the sale of intoxicating liquors contrary to law, or to exact taxes or charges therefor. In our opinion, the exercise of this power is in the nature of a public trust. If the city cannot exercise this power or privilege without a grant from the legislature, and it does exercise the privilege, it is usurping a privilege of a public nature. We do not think the state is debarred from intervening to oust the city from the exercise of such usurped corporate power, on the ground that the privilege cannot be granted by the legislature. It is inexcusable, in a proceeding of this character, for a city to answer that the corporate power it exercises has not and cannot be conferred by legislative grant, and therefore that the

The State, *ex rel.*, v. Wilson.

unlawful and willful exercise of the power may be continued without control or restraint. In this country, a municipal corporation cannot be dissolved for the abuse of its corporate power, nor its charter or franchise forfeited for the acts or misconduct of its agents. The only possible way to keep such corporations within control, is by proceedings of this character to oust them from exercising privileges of a public nature which are not conferred.

In conclusion, we hold that the right of licensing the sale of intoxicating liquors as a beverage, and the exaction of a tax or charge therefor, is a franchise or privilege which neither the city of Topeka, nor any other city in the state, has the power to exercise; and if exercised by any city, a proceeding in *quo warranto* is the remedy to oust the city from the unlawful assumption of such power.

The demurrer to the petition will be overruled.

All the Justices concurring.