The Commonwealth of Pennsylvania ex rel. William U. Hensel, Attorney General, Appellant, v. Peleg Sturtevant and Henry F. Zaring, Owners and Operators of "The Liverpool Ferry."

*Quo warranto—Corporations—Ferries—Exclusive franchise—Forfeiture of franchise—Practice—Pleadings—Formal defects—Arrest of judgment—Effect of verdict after trial on merits.*

In a quo warranto proceeding by the attorney general to forfeit an exclusive ferry franchise granted by a special act of assembly, where the defendants have filed a general denial to the information, and the case has been tried upon the merits, and a verdict rendered against the defendants, the court will not, except in a very strong case, arrest the judgment because the averments in the information are too general.

Where a person is granted a ferry franchise, and the franchise is made

exclusive, within certain limits, so long as the grantee affords facilities for crossing the stream, the act or omission to act which will constitute a violation of the condition must be a persistent and general course of conduct, covering more than special days and acts, and must be continuous through months and, perhaps, years.

In quo warranto proceedings against the proprietors of a ferry having exclusive privileges, the information averred that the defendants had for several years neglected to furnish facilities for passing foot travelers across the river, and had not kept the ferry in repair, or complied with the conditions of the grant; adding the following specifications : 1, the ferryboats are and have been unfit, inadequate and dangerous ; 2, the employees in charge of the ferry are and have been inexperienced, incapable and negligent; 3, defendants do refuse and have refused, on divers occasions, to ferry travelers over the river when requested, so that they have been compelled to go to other ferries a long distance above or below ; 4, the defendants and their predecessors have charged excessive and illegal tolls for ferriage; 5, the defendants have been guilty of other acts of misuser and nonuser. *Held*, that after a trial upon the merits and a verdict against the defendants the court would not arrest the judgment on the ground that the averments in the information were too general.

In quo warranto proceedings against the proprietors of a ferry having exclusive privileges, where the exclusive privileges are conditioned upon the proprietors affording " facilities for crossing," the omission of the word " wilful " in the information, as applied to the neglect or failure charged, is not ground for arresting the judgment, after a trial upon the merits and a verdict against the defendants. Quo warranto will lie to forfeit the exclusiveness of a franchise without affecting the right to exercise the main franchise itself.

Argued May 24, 1897. Appeal, No. 366, Jan. T., 1896, by plaintiffs, from order of C. P. Perry Co., Nov. T., 1894, No. 12, arresting judgment. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and DEAN, JJ. Reversed.

Quo warranto to forfeit ferry franchises.

The suggestion for quo warranto was as follows :

Be it remembered on this 11th day of September, A. D. 1894, comes William U. Hensel, the attorney general of the commonwealth of Pennsylvania, and files this his suggestion, and gives the court to understand and be informed.

1. That by an act of assembly approved the 21st day of March, 1865, P. L. 1867, page 1356, there was established a public ferry over the Susquehanna river at the borough of Liverpool, Perry county, Pa., from Shank's Bridge in said borough to a point at or near Liverpool Station on the Northern Central Rail-

way in Dauphin county, Pa., to be known as "The Liverpool Ferry" and one, William Inch, Sr., his heirs and assigns were by the said act given the franchise to carry foot persons by the said ferry for tolls not to exceed twenty cents.

2. That by the said act the said William Inch, Sr., his heirs and assigns were directed to keep the said ferry in good order and repair and furnish all needful facilities for ferrying foot persons across the said ferry and upon condition that he or they should so do and continue so to do, he or they were given the exclusive right and franchise to conduct the said ferry, and it was further enacted that so long as the said duty was so performed no other ferry should be established for one half mile above or below the said "The Liverpool Ferry."

3. That the franchise aforesaid has passed by devolution, purchase, assignment, etc., from the said William Inch, Sr., to divers persons from time to time, and it is now vested in Peleg Sturtevant and Henry F. Zaring, who claim to be the sole owners of the said franchise at present and for some time past, and are now and have been conducting the said ferry.

4. That the present owners of the said ferry and their predecessors from time to time have failed to furnish all needful facilities for ferrying foot persons across the said river and to keep the said ferry in good order and repair, but on the contrary have conducted and maintained the said ferry in an inadequate, improper, negligent and unlawful manner, and not as required by the conditions of the said grant, which acts of omission, misuser, nonuser and illegal maintenance of the said ferry are specifically as follows : (*a*) that they and their predecessors have for a long time past furnished for the said ferry, inadequate, unfit and dangerous boats ; (*b*) that they and their predecessors have for a long time past employed and placed in charge of said ferry and boats, inexperienced, improper and negligent ferrymen ; (*c*) that they and their predecessors have for a long time past refused and neglected to ferry foot persons on divers occasions, so that large numbers of persons have been compelled to seek other ferries above or below the said "The Liverpool Ferry ;" (*d*) that they and their predecessors have for a long time past charged extortionate, excessive and illegal tolls and refused to carry foot persons for the tolls and ferriage provided by the said act; (*e*) that they and their predecessors have for

a long time past done other and different acts and omissions of misuser and nonuser through and by which they have failed to keep said ferry in good order and repair and furnish all needful facilities for ferrying foot persons across said ferry.

All of which acts, matters and things in the premises have been and continue to be to the great loss, delay and damage of the public, whereby the condition upon which the exclusive grant to the defendants and their predecessors has been violated and failed, and the said exclusive grant.and franchise has long since in fact and in law become forfeit.

Wherefore the said commonwealth prays the consideration of the court here in the premises, and that due process of law be awarded against the said Peleg Sturtevant and Henry F. Zaring, owners and operators of "The Liverpool Ferry," and that it be adjudged that the said Peleg Sturtevant and Henry F. Zaring, owners and operators of "The Liverpool Ferry" and their predecessors have forfeited all and singular the exclusive right, property and franchise to own and conduct the said "The Liverpool Ferry," as the sole and exclusive ferry between the points in the said act of grant named, and have in fact and in law no longer such sole and exclusive power and franchise, so that the commonwealth of Pennsylvania may, if it so is moved, grant to others than the defendants rights and franchises to establish and conduct ferries upon the said Susquehanna river between the points named according to law.

And further that a quo warranto be issued against the said Peleg Sturtevant and Henry F. Zaring, sole owners and operators of "The Liverpool Ferry," to show by what warrant or authority they claim to exercise the said sole and exclusive right to maintain the said "The Liverpool Ferry" as the exclusive ferry between the points named in the said act of March 21, 1865, so that the commonwealth of Pennsylvania may not of her pleasure and mere motion grant unto others than they, the said defendants, the franchise and right to establish and maintain other ferries between said points, etc.

The defendants filed a general denial, and a trial was had on the merits, resulting in a verdict for plaintiff.

The defendants filed the following reasons in support of a motion to arrest the judgment:

1. The 7th section of the Act of June 14, 1836, P. L. 621,

provides that "every suggestion as aforesaid shall set forth the facts as fully as has heretofore been required in informations aforesaid." Regularly the same certainty is required in an information that is required in an indictment. But the suggestion in this case is too general and uncertain because it does not allege that any particular person was refused ferriage, within any particular time mentioned in the suggestion; neither does it mention any particular person from whom extortionate tolls were taken; nor does it set forth any limits of time within which it is alleged the causes of forfeiture occurred.

2. The writ of quo warranto cannot be used to prohibit a person exercising a public franchise from the doing of any particular act or thing which constitutes but a portion of the rights, powers and privileges incident thereto.

3. The suggestion does not aver that the alleged causes of forfeiture were wilful and persisted in by the owners and operators of said ferry, or by the defendants.

4. It appears from the suggestion that the right of the present owners of the said ferry and of their predecessors to exercise the franchise granted by the act of assembly establishing the ferry, has been acquiesced in for a long time past.

5. The suggestion is uncertain, insufficient, and does not set forth any legal cause of forfeiture.

6. The court is without jurisdiction to try the issue presented by the pleadings.

LYONS, P. J., filed the following opinion:

Six different reasons have been assigned in arrest of judgment. It will be necessary to consider only the first and third.

1st. It is contended by the learned counsel for the defendants that "the suggestion in this case is too general and uncertain because it does not allege that any particular person was refused ferriage within any particular time mentioned in the suggestion; neither does it mention any particular person from whom extortionate tolls were taken, neither does it set forth any limits of time within which it is alleged the causes of forfeiture occurred." The seventh section of the Act of June 14, A. D. 1836, Purdon (12th ed.), page 1774, Plac. 7, P. L. 621, provides that "every suggestion as aforesaid shall set forth the facts as fully as has heretofore been required in informations

aforesaid." " Regularly, the same certainty that is required in an indictment is in like manner required in an information : " 5 Bacon's Abridgement (ed. of 1854), 178, citing King v. Roberts, Carth. 226 ; s. c. 3 Salk. 198.

The suggestion filed in this case would not be sufficient to sustain an indictment. There is no time mentioned or limited within which any of the acts complained of as alleged causes of forfeiture of the franchise owned and enjoyed by the defendants were done or omitted. The suggestion does not state the name of any particular " inexperienced, improper or negligent ferryman " or the time when or within which such ferryman was employed. It does not state the time when or who the " foot persons " were that were refused ferriage. It does not state when nor from whom excessive and illegal tolls were collected, nor who were refused ferriage for the tolls provided by the act of incorporation, nor the time when such refusal took place.

In this respect the suggestion is entirely deficient. There is not that certainty required by the act of assembly above referred to. The cause or causes of forfeiture ought to be set forth, with the time and circumstances and the nature and character of the unlawful acts of commission or omission, and the name of the person injured thereby, with such clearness and particularity that the defendants may be informed of the nature and character of the charge they are called upon to meet. This has not been done in the case at bar. In the case of The Com. v. The Commercial Bank, 28 Pa. 383, the suggestion originally filed was general, and lacked the particularity and precision of statement required. For that reason the defendant moved to quash the writ. Whereupon the commonwealth moved to amend the suggestion. The amendments set forth the causes of forfeiture, particularly describing the overt acts, together with the time, name of parties, and circumstances under which each were committed. The court refused to quash the writ and permitted the amendments. No motion to quash or demurrer was filed in this case. The case was tried on the suggestion as filed, without any objections to its sufficiency.

3d. " The suggestion does not aver that the alleged causes of forfeiture were wilful, and persisted in by the owners and operators of said ferry or by the defendants."

This, I think is essential. A mere omission to do an act required by the terms of a charter to be done if unintentional, would not be cause of forfeiture, nor would the unintentional doing of an unlawful, unauthorized or prohibited act. There must be an intent to do wrong, and there must be a wilful violation of the terms of the charter. " To work a forfeiture there should be something wrong; and not only a wrong, but one arising from wilful abuse or improper neglect. . . . There must be an abuse of trust, somewhat of such a nature as would render a trustee liable to forfeit his station on complaint of his cestui que trust, if the question stood in relation between them. Corporations are political trustees. Have they fulfilled the purposes of their trust, or acted in good faith with a view to their fulfillment? is the question to be asked when they are called on to forfeit their charters either for acts of commission or omission : " People v. Turnpike Co., 23 Wend. 236. " An information against a corporation seeking a forfeiture of its franchises for a noncompliance with its charter must aver the alleged nonfeasance, misfeasance or malfeasance to have been wilful on the part of the corporation : 19 Am. & Eng. Ency. of Law, 681, note, citing State v. Columbia, etc., Turnpike Company, 2 Sneed (Tenn.), 254 ; People v. Manhattan Co., 9 Wend. 351. These defects in the suggestion being sufficient to arrest the judgment, it is unnecessary to consider the other reasons assigned.

And now June 18, A. D. 1895, motion and rule for a new trial discharged, and motion in arrest of judgment is sustained.

*Error assigned* was in arresting the judgment.

*William H. Sponsler*, for appellant.—The theory of the court below supposed the commonwealth was trying to convict of some act, while it was, in truth, trying to establish a status of affairs. The commonwealth cared nothing for specific acts except in so far as they made up collectively a condition extending over a considerable period of time, and up to the inception of the writ of which a jury could say that the defendants had ceased to perform their duty.

This court has answered the objections made to the suggestion in the case at bar in Commonwealth v. The Commercial Bank, 28 Pa. 391.

Formal defects in indictments are waived by going to trial on the merits; they can only be taken advantage of before the jury is sworn, by demurrer or on motion to quash: Com. v. Kelly, 10 Lanc. Bar. 107; Com. v. Hill, 2 Pearson, 432; Com. v. Hughes, 11 Phila. 430; Com. v. Kressler, 35 Leg. Int. 420; Com. v. Mouat, 37 Leg. Int. 254; Com. v. Maher, 40 Leg. Int. 100; Williams v. Com., 91 Pa. 493.

The proceeding by quo warranto is wholly a civil proceeding, and only retains its old criminal form generally. It is in fact a civil proceeding, and is fully amendable, and follows the practice in civil proceedings: Spelling on Extraordinary Relief, sec. 1846; Com. v. Bank, 28 Pa. 391; High on Extraordinary Legal Remedies, sec. 710.

Whatever reason is alleged in arrest of judgment must be such matter as would, upon demurrer, have been sufficient to overturn the action or plea: Harley v. Ins. Co., 120 Pa. 189; Owen v. Schmidt, 37 Leg. Int. 82; Ransing v. Kinzer, 3 Lanc. Law Rev. 193; Brothers v. Mitchell, 157 Pa. 484; Com. v. Denworth, 145 Pa. 172; Brown v. Com., 78 Pa. 122; Girts v. Com., 22 Pa. 351.

*James M. Barnett*, with him *Charles A. Barnett*, for appellee, cited in support of the judgment: High's Extraordinary Legal Remedies, 526; People v. Manhattan Co., 9 Wend. 374; Com. v. Walter, 86 Pa. 15; Com. v. Bank, 28 Pa. 389; State v. Evans, 3 Ark. 585.

It is believed that no precedent can be found where this writ was ever issued for the purpose of restricting or preventing any one legally possessed of a public office or franchise from exercising any right, authority, or privilege incident thereto or claimed by virtue thereof: State v. Evans, 3 Ark. 385; s. c. 36 Am. Dec. 470.

In Cummings v. Boyd, 83 Pa. 372, it is said on page 377: " Ordinarily a party who rests his cause upon a demurrer when he might have had a trial upon the facts of the plea, and then the benefit of the legal question, will not be helped out of the position he has voluntarily assumed; but this case is exceptional in its circumstances."

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

By special act of assembly of March 21, 1865, the common-

wealth granted to one William Inch and his assigns, a ferry franchise for foot travelers across the Susquehanna river, at the village of Liverpool, Pennsylvania. The right to conduct the ferry was exclusive in the grantee, and the legislature stipulated that no other grant would be made for a ferry to others, within one half mile above or below; upon this condition, however: "That the grantee and his successors should at all times keep the ferry in good order and repair, and furnish the needful facilities for ferrying foot persons over said river."

The grantee proceeded to construct and operate the ferry, and his successors, these defendants, were in the control and management of it, on September 12, 1894, when the suggestion for a quo warranto was filed by the attorney general. Defendants had succeeded to Inch some years before. The information avers: That the defendants have for several years neglected to furnish facilities for passing foot travelers across the river; have not kept it in repair, or complied with the conditions of the grant; then follow the specifications: 1, the ferryboats are and have been unfit, inadequate and dangerous; 2, the employees in charge of the ferry are and have been inexperienced, incapable and negligent; 3, defendants do refuse and have refused, on divers occasions, to ferry travelers over the river when requested, so that they have been compelled to go to other ferries a long distance above or below; 4, that defendants and their predecessors have charged excessive and illegal tolls for ferriage; 5, have been guilty of other acts of misuser and nonuser; whereby, it is averred, the condition of the grant has been broken, and the exclusiveness of the franchise has become forfeit to the commonwealth. On this suggestion, the quo warranto issued, directed to defendants to appear and show cause why they claim the exclusive grant to establish and maintain a ferry at that point. To this defendants appeared and filed plea denying all the averments in the suggestion, and on replication by plaintiff, issue was joined, and the cause proceeded with to trial before a jury. The trial occupied two days; many witnesses testified; the evidence was conflicting, and was submitted by the court to the jury, who found a verdict for plaintiff. Although the evidence is not before us, the parties and the court below assume, that there was evidence sufficient, if the jury believed it, to sustain the averments and warrant the verdict. After ver-

dict, however, the defendants filed a motion in arrest of judgment, for the reasons : 1, there was not that certainty in the information required by law ; 2, the writ of quo warranto cannot be used to forfeit a part of a public franchise ; 3, there is no averment that the acts complained of were wilful; 4, that the acts complained of were acquiesced in for so long a time that this method of redress cannot be adopted ; 5, no legal cause of forfeiture is set forth.

After argument, the court, in opinion filed, sustained the motion and arrested judgment; from this order, plaintiff appeals. The learned judge of the court below sustains the motion, in substance, for two reasons : First, the averments in the information are too general, in that they do not set out the time within which the acts were committed, the name or names of any incompetent employees, the names of any persons who were refused ferriage, or from whom excessive tolls were demanded. In these particulars, he holds that the same certainty is required as in an indictment for a misdemeanor. Second, he is of opinion that the failure of the suggestion to aver that the acts complained of were " wilful," is fatal, and no judgment for plaintiffs could be entered because of that omission.

While the opinion is forcible, on the premises assumed and sustained by the authorities cited, it seems to ignore the nature of the condition imposed by the special act, and the character of the proof necessary to show a breach of it. If a single act of omission or commission were sufficient to work a forfeiture, and the commonwealth sought to rest its case on proof of such act, the opinion of the court would be sound. As has been noticed, the defendants, when called on to plead, filed a general denial to the information. If, at that time, they had demurred for the same reasons set up after verdict, it may be that the court, unless the charges were particularized by plaintiffs within a reasonable time before trial, would have been justified in sustaining the demurrer. And this would have been done, not because the charges were not certain enough to warrant judgment, but because the court might have assumed that they lacked that definiteness which would enable respondents to defend against them. Or, on application by defendants, the court might, and doubtless would, have ordered plaintiff to file a bill of particulars, which would have reached the same end.

It must be borne in mind, however, that in all applications for this writ, before it issues, the party charged has always one and often two hearings before the commonwealth's officers; the plaintiff's case must then, to a great extent, be disclosed; not only the nature of the charges, but the particular evidence on which they are based and the names of witnesses to sustain them, all come to the knowledge of the respondent. It may well be, then, that when the issue is framed in court, he is in full possession of plaintiff's case, and requires nothing further, because he apprehends no surprise. Here, defendants went through a prolonged and careful trial; took their chances of a verdict; they lose, then raise an objection which goes to a matter just as obvious before trial as afterwards. To succeed by such a method of practice, the party adopting it should have a very strong case to induce the court to sustain a motion in arrest of judgment, based on purely formal and technical defects.

What conduct of defendants in operating their ferry under the grant will warrant a withdrawal of the franchise in part by the commonwealth? The second section of the special act says: " The said William Inch, his heirs and assigns, shall own, establish and have the exclusive right to use the said public ferry, and keep the same in good order and repair, and furnish all needful facilities for ferrying foot persons across said river, and receive as tolls for each person a sum not exceeding twenty cents." This is the full extent of the exclusive grant. Now comes the condition plainly annexed, and upon which its exclusiveness depends: " That no person or persons shall be permitted to keep a public ferry within one-half mile above or below said ferry, so long as the said incorporator or his assigns afford facilities for crossing said river."

The act or omission to act which will constitute a violation of the condition must be a course of conduct, not a single failure to carry a passenger, or several isolated acts of negligence, but a continued, persistent neglect of duty must be shown, before a failure to " afford facilities," would be proved. " Facilities," in the sense here used, means everything incident to the general, prompt, and safe carriage of passengers, boats in good repair, appliances answering the purpose, and readiness and willingness to perform throughout the year. Interruptions by ice, floods, accidents to machinery or employees might often occa-

sion temporary inconvenience to the public, but of these the public could have no right to complain. It is obvious that the charge which would cover a violation of the condition must go to a persistent and general course of conduct, covering more than special days and acts; it must be continuous through months and perhaps years. This, the plaintiff concisely and clearly averred; his proof, necessarily, must come from many witnesses, part of the traveling public, to whom ferrying facilities have not been afforded; they must testify to acts of defendants on many days, though each one would, probably, be able to testify to but one act on one day, but all of them together would testify to acts and days spread over a considerable period; their testimony, taken as a whole, would show a continuous state of affairs at the ferry, and would prove facilities had not been afforded. The averment would then be proved; and there is no reason why such averments would not, in view of such proof, warrant a judgment. We are not speaking now of what defendants might have demanded from the discretion of the court, to enable them to prepare a defense; they demanded nothing. We are discussing only whether the averment is lacking in legal formality and definiteness under this statute. This is the exact point decided by this court in Commonwealth v. Commercial Bank, 28 Pa. 391. There the quo warranto was issued against the bank to forfeit its charter, because of exacting usurious rates of interest. One of the counts, the second, in the information, charged: "For many months past, the defendant has been in the constant practice of discounting promissory notes at exorbitant and usurious rates of interest, far exceeding the rate of one half of one per centum for thirty days." The special demurrer to this count was that it did not allege any facts to sustain it, or any of the particulars of such alleged dealings. This court held the count good, saying: "It is not necessary that the acts constituting the offense be particularly described with all their circumstances, if it can be distinctly defined without this, and much of the particularity of pleading comes from an abundant caution, rather than from the requirements of the law. But many offenses are composed of a class of forbidden acts, punishable as a class, and such offenses are properly described by the general term under which the acts constituting them fall, and are individuated only by time and

place." And again: "It is the diversion of its business out of the prescribed way that constitutes the offense, though the proof of it can be made out only by giving particulars. The particulars which it is thought ought to have been given are not the facts charged, but the evidence of them, and are properly left out."

We think, under this special act imposing the condition, the charge of a violation of the condition is sufficiently certain to sustain a judgment on the verdict.

As to the omission of the word "wilful," we do not think it essential, because a neglect or failure to "afford facilities for crossing said river" is the breach of the condition on which the exclusiveness of the franchise is forfeited. The information avers an unlawful and negligent operation of the ferry; this is sufficient after verdict, because the objection is to an omission purely formal. In an indictment, since the criminal code of 1860, it is sufficient to charge the crime substantially in the language of the act of assembly prohibiting it; and further, any objection to any indictment for any formal defect must be taken by demurrer or motion to quash before the jury was sworn, and not afterwards. Under the strictness of criminal pleading that now prevails in this state the defendant's motion was too late.

The forfeiture sought by the writ is only that which confers the exclusive right, for it is only that part of it which is dependent on a performance of the condition. There is no reason why it should be held that the writ extends to the entire franchise or to no part of it.

There is nothing of merit in the remaining reasons. The judgment of the court below arresting judgment is reversed, and it is ordered that judgment be entered for plaintiff.