STATE OF FLORIDA ex rel. BEN WATKINS, *Relator,* vs. J. M. FERNANDEZ, Respondent.

143 So. 638.

En Banc.

Opinion filed September 27, 1932.

*Zewadski & Pierce* and *J. Tom Watson,* for Relator;
*Henry E. Williams,* for Respondent.

TERRELL, J.—This is an original proceeding in quo warranto to test the right of the respondent, J. M. Fernandez, to exercise the functions, privileges, and title vested in him as nominee of the democratic party to the office of Constable for the third justice of the peace district of Hillsborough County. The cause is considered at this time on a motion to quash the information which raises the sole question of whether or not a nomination to office in this state can be tested by quo warranto.

It appears that relator and respondent were candidates for nomination to the office of constable for the third justice of the peace district of Hillsborough County in the State-wide primary held June seventh and June twenty-eighth, 1932. The respondent on the face of the returns, having received the highest number of votes cast was duly certified as the nominee of the Democratic party. On July 28, 1932, this proceeding was instituted by the State on the relation of Ben Watkins, the Attorney General having declined to do so. The writ commands the respondent to show by what authority of law, he holds the nomination of the Democratic Party for the office of Constable of the Third Justice of the Peace District of Hillsborough County, including the title, powers, franchises and privileges incident thereto.

To support his motion to quash respondent relies on *Ex parte* Smith, 96 Fla. 519, 118 So. 306; Moore vs. Board of County Commissioners of Leon County, 96 Fla. 519, 118 So. 476; State vs. Carrington, 194 Ia. 785, 190 N. W. 390; and In Re Bewley, 245 N. Y. S. 105, 138 Miss. Rep. 108.

The two cases last cited were statutory proceedings to contest the results of primary elections under the ap-

plicable statutes of Iowa and New York where the status of the primary law and a nomination thereunder are materially different from what they are in this State, consequently these cases are not conclusive of the case at bar. Ex Parte Smith was instituted by the Attorney General pursuant to Section 3582 Revised General Statutes of 1920 (Section 5447 Compiled General Laws of 1927) which restricts the remedy by quo warranto when so brought to "any person claiming title to an office which is exercised by another." In other words, Ex Parte Smith was presented to this court in a most restricted ambit and it was so disposed of. The cause having been brought within the terms of the statute the court was as strictly confined thereby as was the Attorney General. If it contains words or substance decisive of any question or power not embraced in the restricted range in which it was prosecuted, they were obiter.

Moore vs. Board of County Commissioners of Leon County is likewise inept, that being a suit in equity to restrain the County Commissioners from putting the name of W. L. Clarke on the ballot to be voted for in the following general election, he having been nominated as a candidate for tax assessor by the County Executive Committee as authorized by Section 354 Revised General Statutes of 1920 (Section 411 Compiled General Laws of 1927).

From an examination of State vs. Carrington, it seems that nomination to office in a primary in Iowa gives the nominee no preference whatever except the convenience of having his name placed on the ballot to be voted for in the ensuing general election. The defeated candidate may likewise stand for election in the general election and have the votes counted for him the same as if he had not run in the primary. A similar status prevails in New York. In neither of these States does the holder of a

nomination to a political office carry with it anything in the nature of a franchise or right akin to that held by an officer. Under such circumstances there was no premise for the remedy by quo warranto. A very different status attaches to the holder of a nomination to office under the law of this State as we shall subsequently show.

But relator contends that this court in *Ex parte* Smith, supra, overlooked the liberal application permissible to quo warranto and instead gave it a narrow technical construction decidedly within the rule of permissible allowance to it. The answer to this contention is that *Ex parte* Smith was decided within the scope in which it was presented while in the instant case the question is raised in a manner that we can give it an application consistent with its purpose. In this situation we will not emasculate it by a system of refined dialectics neither will we give it a field of operation it was never purposed to cover.

The pertinent statutes, Sections 3581-3594 Revised General Statutes of 1920 (Sections 5446-5449 Compiled General Laws of 1927) do not define the scope of the remedy by quo warranto except as to the method of testing the right to office, though this court has frequently said that the use of that remedy as employed in the constitution and law of this state has reference to its application as a common law writ.

Blackstone (3 Com. 262, 4th Am. Ed. 322) defines quo warranto as a high prerogative writ, in the nature of a writ of right for the King against him who obtained or usurped any office, franchise, or liberty of the crown, which also lay in case of non-user or long neglect of a franchise, or misuser or abuse of it. It is now regarded as a civil remedy and under the statute of 9 Anne, Chapter twenty, was succeeded by the information in the nature of quo warranto. Under the common law the informa-

tion could not be filed by an individual without the consent of the Attorney General but this rule was changed by the statute of Anne to authorize any person interested to file it though it cannot be used to determine a private right in which the public is not interested.

An office referred to by Blackstone comprehends a public or private employment and the right to take the fees or emoluments therefor. In our day it comprehends definite tenure, emolument and the exercise of some portion of the sovereign will. A franchise as used by Blackstone had reference to a royal privilege or branch of the King's prerogative subsisting in the hands of the subject and must arise from the King's grant or be held by prescription. Words and Phrases 3. We understand a franchise to be some special privilege conferred by government on the individual, natural or artificial, which is not enjoyed by its citizens in general. In this country it can only be exercised by grant from the State. Blackstone employed liberty as synonymous with franchise. It referred to some part of the sovereign power vested in an individual. Under our law the latter term has been very much enlarged and extended though that phase of it has no application to this case. We are here interested in the fact of whether or not the right to nomination in a primary may be questioned by the same process that the right to an office, franchise, or liberty was questioned at the common law.

In some States such as Illinois and Kansas, quo warranto lies in any case where persons or corporations claim and exercise a privilege or immunity of a public nature without legislative authority, whether within the definition of a franchise or not. Swarth vs. People, 109 Ill. 621; State ex rel. vs. City of Topeka, 30 Kan. 653, 2 Pac. 587. It may be employed to try the right to and oust one for engaging in the business of life insurance

or banking without complying with the conditions prescribed by law therefor. People vs. Utica Ins. Co., 15 Johns (N. Y.) *358. It was also by statute used in Louisiana to test the right to certain municipal offices. State vs. Ramos, 10 La. Ann. 420. It was held in Pennsylvania that the right of a charitable institution to own property was such a franchise as warranted a proceeding in quo warranto to escheat it. West's Appeal, 64 Pa. St. 186. It was held in Georgia that the collection of tolls on a highway or bridge without license or legal authority was an usurpation of a franchise justifying quo warranto. Whelchel vs. State, 76 Ga. 644. It has also been used to test the right to operate a public ferry which can only be done by a grant from the State. Appeal of Douglas, 118 Pa. St. 65, 12 Atl. 834. It was used to test the right of an individual to exercise a franchise as recorder claiming the right to vote with the aldermen. Reynolds vs. Baldwin, 1 La. Ann. 162. The assumption of a mere power by an individual such as the right to manufacture an article or deal in evidences of indebtedness without authority to do so may be tested by quo warranto. Spelling, Injunction and Extraordinary Remedies (Second Ed.) Vol. 2, 1566. It may also be employed to test the exclusiveness as well as the right to enjoy a franchise. Commonwealth vs. Sturtevant, 182 Pa. St. 323, 37 Atl. 916. So examples of its appropriation might be continued ad infinitum, but enough of this.

There is nothing of the sacrosanct or mystical about a proceeding in the nature of quo warranto. It is subject to like canons of common sense application as the other ancient prerogative writs. The acid test determinative of whether or not it will relieve against the exercise of privileges claimed to be established as matters of publici juris by statute is found in the answer to these questions: (1) Has the legislature prohibited its exercise by

citizens generally, either with or without condition; and if it has, (2) Were the evils in view as a reason for the prohibition of a public or private character. Spelling, Injunctions and other extraordinary remedies (Second Ed.) Vol. 2, 1552.

The precise question presented here stands unanswered in this jurisdiction. Our closest approximation to it was in the recent case of State *ex rel.* Bauder vs. Markle (not reported) decided July 6, 1932, where we held that the position of Superintendent of Yacht Docks of the City of Miami was at least a "liberty" or "quasi-official right" to which the claimant could test his right by quo warranto. We left open the question of whether the Superintendent of Yacht Docks of the City of Miami was an office of an employment. It was shown that the occupant had a fixed compensation and was vested with prescribed municipal powers and duties.

The Superintendent of Yacht Docks of the City of Miami is appointive, whereas the nominee in a Florida primary is elective. It is certain that nomination by primary being a convention of much later origin, was unknown to the common law which generated the remedy by quo warranto but the common law of Florida is a blood descendant of the common law of England and as already shown, it has been extended to many new situations not formerly contemplated but included within the principles governing the scope of the writ. The question then recurs on whether the facts in this case are such that we would be authorized to extend the remedy by quo warranto to test the right of respondent to the nomination brought in question.

The primary law of this State gives the holder of a nomination to office under it something more than the convenience of having his name printed on the ballot. The rights acquired under it are valuable not alone to

those who acquire them but to the people of the State generally. To an appreciable degree the welfare of the State depends on the manner in which the primary laws are executed. In many localities, nomination in a primary is equivalent to election, it is conclusive as to the election of delegates and committeemen, it is frequently employed as a means for the electorate to express their choice as to appointive officers, in case of the death or resignation of the incumbent the nominee in the primary, if there be one, is generally named to fill the vacancy. Under Section 256 Revised General Statutes of 1920 (Section 312 Compiled General Laws of 1927) as amended by Chapter 14657 Acts of 1931, only the nominee thereunder is entitled to have his name placed on the ballot to be voted for at the next general election and all parties who participated in said primary election are precluded from being candidates in or having their names printed on the general election ballot. We think under such a showing the rights acquired by the nominee in a Florida primary election are well within the test necessary to determine the applicability of quo warranto. The legislature has prohibited the rights so acquired to the public generally and the reasons for such prohibition were of a public character. The remedy by quo warranto should therefore be extended to such a nomination.

This view is supported by State *ex rel.* Merrill vs. Gerow, 79 Fla. 804, 85 So. 144; D'Alemberte vs. State *ex rel.* Mays, 56 Fla. 162, 47 So. 489; State vs. Haskell, 72 Fla. 176, 72 So. 651, text 657, and Section 359 Revised General Statutes of 1920 (Section 416 Compiled General Laws of 1927) which provides that all contests over the results of primary elections shall be determined in the same manner as like contests over the results of general elections. In Jarman vs. Mason, 102 Okla. 278, 229 Pac. 459, the court construed a provision of the Oklahoma

primary law similar to this as authorizing the use of quo' warranto to test the right to a primary nomination. Other Oklahoma decisions, Roberts vs. Marshall, 33 Okla. 716, 127 Pac. 703 and Whitaker vs. State, 58 Okla. 672, 160 Pac. 890, while construing a state statute support this view. See also State vs. Payne, — Ala. —, 139 So. 99. Viewed in the light of the applicable statute, controlling the scope in which presented there is nothing in this view in conflict with *Ex parte* Smith, supra, which was under the statute.

The authorities are not entirely harmonious but the dominant current of late decisions is to the effect that the existence of a statutory method for testing the results of an election do not bar the remedy by quo warranto to try title or right to the product of the election. The remedy by contest is merely cumulative and not exclusive. *Ex parte* Beatty, 98 Fla. 785, 124 So. 273; Buckman vs. State ex rel. Spencer, 34 Fla. 48, 15 So. 697; Whitaker vs. State, 58 Okla. 672, 160 Pac. 890; State *ex rel.* Fair vs. Frazier, 28 Neb. 438, 44 N. W. 471; People vs. Jones, 20 Calif. 50; People vs. Holden, 28 Calif. 123; Grey vs. State *ex rel.* Langham, 92 Tex. 396, 49 S. W. 217; State *ex rel.* Brooks vs. Fransham, 19 Mont. 273, 48 Pac. 1; Snowball vs. People. *ex rel.* Crupe, 147 Ill. 260, 35 N. E. 538; State *ex rel.* Harris vs. Elliott, 117 Ala. 150, 23 So. 124; Relender vs. State *ex rel.* Utz, 149 Ind. 283, 49 N. E. 30; Parsons vs. Durand, 150 Ind. 203, 49 N. E. 1047. People *ex rel.* Requa vs. Newbrand, 32 N. Y. App. Div. 49, 52 N. Y. S. 280; State *ex rel.* Barton vs. Frantz, 55 Neb. 167, 75 N. W. 546 The doctrine of the English Courts appears to be contra. Reg. vs. Morton, 1 L. R. Q. B. Div. 39 (1892). In *Ex parte* Beattie, this Court held that Sections 379 to 383 Revised General Statutes of 1920 (Sections 444 to 448 Compiled General Laws of 1927) were not the sole and only means of contesting

elections to county office but were supplemental to the common law remedy of mandamus and quo warranto for accomplishing such relief as can be appropriately granted within the scope of said remedies.

Its first maxim is that equity will not suffer a right to be without a remedy. This principle was reincarnated in Section four of the Declaration of Rights, Constitution of Florida. In a changing world marked by the ebb and flow of social and economic shifts, new conditions constantly arise which make it necessary, that no right be without a remedy, to extend the old and tried remedies. It is the function of courts to do this. It may be done by working old fields but when it becomes necessary they should not hesitate to ''break new ground'' to do so.

While we hold that relator brought the proper action to determine the right of respondent as nominee for Constable to the Fifth Justice District of Hillsborough County, we think that there are patent reasons why we should not retain jurisdiction of the cause. In the first place the Circuit Court has co-ordinate jurisdiction with this Court to grant the writ, the issues are such that testimony will have to be taken and they may present themselves in such a way as to command a jury. This Court has never empaneled a jury and has no facilities for taking testimony. It was never intended that it perform the function of a nisi prius court, this being peculiarly within the province of the Circuit Court. If we take an original jurisdiction in this contest other matters of similar character will press us for attention to such an extent that the Appellate work will be very much delayed.

This is primarily a court of appeals and while it has concurrent jurisdiction with the Circuit Court to issue writs of quo warranto it has consistently declined to do so excet in cases where the public interest demanded and

then on an agreed statement of facts. Either party has the right to appeal if aggrieved at the judgment where rendered by the Circuit Court.

The motion to quash will therefore be denied but the cause will be dismissed with leave to the relator to pursue his remedy in the Circuit Court. Jarman vs. Mason, supra.

It is so ordered.

BUFORD, C.J., AND WHITFIELD, BROWN AND DAVIS, J.J., concur.

ELLIS, J., dissents.

ELLIS, J. (dissenting).—It is not a question of the applicability of the remedy of Quo Warranto but whether such action was necessary in view of the statutory remedy invoked by Relator. Sec. 444 C. G. L. The maxim "nemo debit vis vexari pro una; et eadem causa" is applicable. The relator may obtain the same reasons upon the same evidence against this same party in the statutory proceeding which he began as he could obtain by Quo Warranto. I think therefore that the motion to quash should be granted.