ROBERTS *et al.* v. MARSHALL *et al.*

No. 4431.   Opinion Filed October 24, 1912.

(127 Pac. 703.)

1.   MANDAMUS—Subject of Relief—Acts of Officers—Election Board. Where the returns of a primary election have been made to the State Election Board by the county election boards of the counties constituting a legislative district, and such returns are regular in form, properly certified, and valid upon their face, and the State Election Board has met and canvassed such returns, declared the result thereof, and issued a certificate of nomination to the candidate shown to be successful by such returns, the State Election Board cannot be compelled by mandamus to meet and recanvass another set of returns subsequently certified to it by a county election board, either voluntarily or by order of court.

2.   SAME—Other Remedy—Quo Warranto. A defeated candidate who complains that the returns canvassed by the State Election Board were irregular and fraudulently made by the county board has a remedy by an action in the nature of quo warranto against the holder of such nomination to try the title thereto.

(Syllabus by the Court.)

*Error from District Court, Texas County;*
*R. H. Loofbourrow, Judge.*

Action by O. Marshall for mandamus to the State Election Board and others. From the judgment, defendants W. L. Roberts and others bring error. Reversed and remanded, with directions.

*Orville T. Smith* and *Ross N. Lillard,* for plaintiffs in error.

*E. L. Fulton,* for defendants in error.

HAYES, J.   This action grows out of the recent primary election held on August 6th of this year throughout the state for the purpose of nominating by the different political parties candidates for various state and county offices. The action was instituted in the court below by defendant in error O. Marshall against the State Election Board and the county election board of Texas county as defendants. He alleges in his petition that

both he and plaintiff in error W. L. Roberts were eligible to and were candidates for the nomination by the Democratic party for the office of representative from the legislative district composed of Texas and Cimarron counties, that on the face of the returns, certified by the various precinct election boards of Texas county, he received not less than 368 votes, and that the said Roberts received not more than 426 votes for such nomination; but he alleges that the county election board neglected and refused to certify to the State Election Board the true returns as certified by the precinct election boards of said county, and made false returns to the State Election Board to the effect that he received 349 votes and the said Roberts 531 votes; that, if the county election board had certified the votes actually cast in the county for said candidates as certified by the precinct boards, he would have received the nomination from said district by a vote of not less than 93. He further alleges that the State Election Board, however, canvassed the returns from said counties, certified to the State Election Board by the county boards, and thereon declared the result of said election to be that Roberts had received the nomination, and accordingly issued a certificate of nomination to him. In the prayer of his petition defendant in error Marshall, who will hereinafter be referred to as plaintiff, prayed that the court issue its order of mandamus to the county election board of Texas county, compelling them to reconvene and re-canvass the votes cast in said county as certified in the returns of the precinct election officers, and to certify the result of such canvass to the State Election Board, and that the State Election Board be enjoined from placing upon the official ballot of the Democratic party for the general election to be held on November 5th of this year the name of Roberts for the office of State Representative of said counties, and that the State Election Board be required to place upon said ballot the name of plaintiff as candidate for said office, and also prayed for all further relief that might appear to the court right and proper.

The members of the State Election Board entered their appearance and filed an answer, denying some of the allegations of the petition and specifically admitting others. They allege

by way of an affirmative defense that complete returns of the
primary election in the counties of Texas and Cimarron were
in due form made to the board and were duly canvassed by the
board, and as a result of said canvass it was found that there
were cast in Cimarron county 240 votes for plaintiff and 89 votes
for Roberts; that in Texas county there were cast 349 votes for
plaintiff and 531 votes for Roberts, making a total number of
votes cast as shown by the returns filed by the two county elec-
tion boards with the State Election Board of 589 votes for plain-
tiff and 620 votes for Roberts, whereupon the board declared
Roberts nominated, and issued to him a certificate of nomina-
tion. The State Election Board alleges that it has no informa-
tion concerning the votes cast for said candidate in the various
precincts of Texas county, except as shown by the returns of the
county election board of that county filed in the office of the
State Election Board. The county election board, having un-
successfully demurred to plaintiff's petition, filed an answer de-
nying generally all the allegations of the petition, except they
admit that an abstract of the votes from all the precincts in Texas
county was made and certified to the State Election Board as
set out in plaintiff's petition. They affirmatively allege that there
were no returns by the precinct election officers of the precincts
in Texas county as required by the provisions of section 7, c.
106, Sess. Laws 1910-11, and, upon ascertaining this fact, they
sought the advice of counsel, and under his advice proceeded to
count the ballots cast for said office in said county; that they cor-
rectly counted all the ballots from each and all the precincts of
the county, and truthfully certified the result to the State Elec-
tion Board; that their action was taken in good faith, and that an
inspection of the ballots would show that the certificate made by
them to the State Election Board is correct.

At this stage of the proceedings, plaintiff in error Roberts
appeared and filed his motion, asking leave to be made party de-
fendant and for permission to answer, which was granted. He
admits most of the allegations of plaintiff's petition, except that
he disclaims any knowledge or information of any fraud in the
election and in the count and canvass of the returns of the votes

therein, and says that, if any such fraud existed or was perpetrated, it was without his knowledge, procurement, or consent, and he asks that the court inquire into the legality of said election and cause to be counted the votes cast therein, to the end that the truth might be determined.

The trial court found, among other facts, that returns were made from all the election precincts of Texas county to the county election board in the manner required by law, and that they showed the vote to be substantially as alleged in plaintiff's petition; that, when the county election board canvassed these returns, they ignored the returns made by several precinct election boards, and, upon the advice of counsel, they opened the sealed packages containing the ballots voted at such precincts and from a count made by them of said ballots and from the returns from the other precincts prepared an abstract of the returns which were included in the returns made by the county board to the state board; that there was never any contest of the primary election filed with the county election board, nor any order made by a court authorizing the county election board to open the sealed packages and to count the ballots; that the State Election Board acted upon the return of votes made by it from the county board when it declared the result of the election to be the nomination of plaintiff in error Roberts and issued to him a certificate of nomination.  Upon these facts the court concluded as a matter of law that the county board had no authority to open the sealed packages and count the ballots, that it was their duty to canvass the returns as made by the various precinct boards, and the judgment rendered by the trial court requires the county election board to reconvene and recanvass the votes as shown by the election returns from the various precincts and to certify the result thereof to the State Election Board, and requires the State Election Board to reconvene and recanvass said returns and to issue a certificate of nomination to plaintiff Marshall, that the certificate heretofore issued to Roberts be canceled; and that the name of Marshall be placed upon the ballot for the general election as the nominee of the Democratic party for Representative from that district.

This appeal is prosecuted by petition in error and transcript. The evidence is not before us; and the only questions presented by the appeal, therefore, must arise out of the question whether the judgment is supported by the pleadings and the findings of fact of the trial court. Those two questions are: First. Does the petition state a cause of action for mandamus or injunction? Second, Does the answer of plaintiff in error Roberts convert the proceedings into a *quo warranto* proceeding? We think both of these questions must be answered in the negative.

The statute of this state makes it the duty of the precinct election officers, when they have completed the count of the vote in a precinct, to fill out the spaces in the back of the poll book, showing in words and figures the total number of votes cast in the precinct for each candidate. The poll book, together with the tally sheet, are required to be sealed up in an envelope, marked, "poll books and tally sheets." The voted ballots are required to be sealed in other envelopes, marked as by the statute designated, and all such envelopes are required to be returned by the precinct inspector and delivered to the county election board. The county election board is required, when said returns shall have been received, to open the envelopes containing the ballot books and tally sheets and list the result of the election for state officers upon blanks prepared for that purpose by the State Election Board, and to certify to the State Election Board the result of the vote upon all candidates upon the state ticket, and such certificates are made *prima facie* evidence of the correctness of such returns. The State Election Board is required to canvass the returns of the election from all the counties thus made and issue certificates of nomination to the successful candidates. It is admitted by all that the State Election Board, long prior to the institution of this suit, did canvass the returns that were made in due and legal form to it and properly certified to by the county election board. The primary and final purpose of plaintiff's action in the court below is to secure an order compelling the State Election Board to reconvene and redischarge this duty. Incidental thereto, he seeks to go beyond the returns made to the State Election Board by

having the county board compelled to reconvene and recanvass the returns made to it, and certify again the result of the election in Texas county to the State Election Board.

The authority conferred and duty imposed by the statute upon the State Election Board is to ascertain the result of the vote for the candidate for any office by canvassing the vote cast in each county as shown by the abstract of votes from each county certified by the county election board to the state board. No judicial power is conferred for ascertaining such result from any other papers or other evidence. Its duties are ministerial, and it cannot hear evidence *aliunde* the returns or go behind the returns, regular and valid upon their face, for the purpose of determining whether the election officers of the county have irregularly or fraudulently canvassed the returns of any county. *Stearns et al. v. State ex rel.,* 23 Okla. 462, 100 Pac. 909. When the board examined the returns from Texas county, and determined that they had been made regularly and properly certified to by the officers authorized under the law to make and certify to same and that they were valid upon their face, they had but one duty to perform, and that was to canvass the vote certified, which they did. In doing so they acted within the law, and the issuance by them of a certificate of nomination to Roberts was a lawful act, and such certificate, when issued, was valid.

If their act in issuing this certificate is now unlawful and such certificate invalid, it must be so because this court, after going behind the returns, which the board could not go behind, determines that certain subordinate officers of the election machinery have committed irregularities or fraud; but to ascertain these facts is to try the title to the nomination, and not to try the question of whether the state board has performed the duty the statute imposes upon it. This cannot be done in this character of proceeding; for, by section 3303, Comp. Laws 1909, it is provided that all contests arising out of primary elections shall be settled and decided in the same manner as is now and may hereafter be provided for general elections, except as otherwise provided by the statute, and the proper procedure for con-

testing an election or trying title to an office is an action in the nature of *quo warranto* (*Newhouse v. Alexander*, 27 Okla. 46, 110 Pac. 1121, 30 L. R. A. [N. S.] 602, Ann. Cas. 1912B, 674), except by specific provision of the statute a recount by the county election board may be had in a primary election upon the verified application of a candidate, setting up facts which, if true, would change the results of the election in his favor. Section 9, art. 4, c. 16, Sess. Laws 1909. The state board, having discharged the duty enjoined upon it by law, could not now by a writ of mandamus be compelled to do that which it has already done. The authorities are agreed that, when a canvassing board has counted the votes and declared the result according to law, it has no power or authority to make a recount. If the court could compel the board to reconvene and recount a new set of returns certified up to it, the board would have authority to do so without such action of the court; and the result would be that a canvassing board might from time to time, as new sets of returns might be certified to it, proceed to reconvene and declare a different result from the result declared from the next preceding canvass, and as declared by one author, "render the whole proceeding a farce." McCreary on Elections (3d Ed.) par. 232. *Rosenthal v. State Board of Canvassers*, 50 Kan. 129, 32 Pac. 129, 19 L. R. A. 157, and *O'Hara v. Powell et al.*, 80 N. C. 103, are directly in point. In the Kansas case, Rosenthal and a man by the name of Stubbs were candidates for election as a member of the House of Representatives of the state of Kansas. Upon the face of the returns filed with the county clerk, Rosenthal received 156 votes and Stubbs 123; but, when the returns from the county were certified to the state board of canvassers, from negligence or design the figures were transposed in the abstract so as to show that Stubbs received the highest vote. The state board of canvassers acted upon the returns, and issued a certificate of election to Stubbs. Thereafter a second certified abstract was voluntarily filed with the state board, showing the true vote, and showing that Rosenthal was elected. He brought his action to mandamus the state board of canvassers to reconvene and recanvass the vote and

declare him elected, which the court refused to do. The only distinction between that case and the case at bar is that in that case the second set of returns, which plaintiff sought to have the state board canvass, were voluntarily made to it, whereas in this case they must be made under order of the court. In the North Carolina case, the state board of canvassers, pending the application of plaintiff for mandamus to compel a reassembling of the board of county canvassers and a recount of the votes cast in the county for candidates for the House of Representatives, met and canvassed the returns that had already been certified to the state board by said county board. Without determining whether in any event the board of county canvassers, who, having failed to perform the full duty imposed upon them by the statute, might be compelled by mandamus to reconvene and recanvass, the court held that the writ would not issue in that case, because the state board, acting upon the returns before it, regular upon their face, had declared the result of the election and issued a certificate of election, and a writ in that case could afford to plaintiff no relief, but that he had a speedy and adequate remedy at law by a proceeding in *quo warranto*. *State ex. rel. Rinder v. Goff,* 129 Wis. 668, 109 N. W. 628, 9 L. R. A. (N. S.) 916, is another case in point, and supports the rule of the foregoing cases.

Nor can plaintiff's contention that defendant Roberts' answer converted this proceeding into a proceeding in *quo warranto* be sustained. It is true that Roberts states in his answer that if any such fraud or irregularities exist or were perpetrated by the county election board, as is alleged in plaintiff's petition, he asks that the court inquire into the irregularity of said election and cause the votes cast therein to be counted to the end that the truth may be determined; but it is Roberts who holds the nomination and the *prima facie* title thereto now in controversy. Informations in the nature of *quo warranto* may be filed by the prosecuting officers of the state on behalf of the public against a person who has usurped an office or occupies the same without right or title. Such informations may, under certain circumstances, be filed upon the relation of private persons and

by private person, but always against the occupant of the office. We know of no authority that holds that one who occupies the office may maintain such an action against one claiming title thereto in order that the rights of the claimant may be ascertained, and we can conceive of no reason upon which such a doctrine could be founded; and it appears that the trial court did not regard the proceeding as one in the nature of *quo warranto,* for he states as one of his conclusions of law that the court is not authorized in this proceeding to go behind the election returns, which is the correct rule in a mandamus proceeding, but not in a *quo warranto* proceeding.

The judgment of the trial court is reversed and the cause remanded, with direction to set aside and vacate the alternative writ, dissolve the temporary injunction, and to dismiss plaintiff's petition.

TURNER, C. J., and WILLIAMS, KANE, and DUNN, JJ., concur.