**JARMAN v. MASON et al.**

No. —    —Opinion Filed Sept. 16, 1924.

(Syllabus.)

**1. Courts—Supreme Court—Original Jurisdiction—Quo Warranto.**

The Supreme Court has original jurisdiction in a civil action brought under the provisions of sections 458 and 459, Comp. Stats. 1921, to obtain relief similar to that anciently obtainable by writ of quo warranto.

**2. Quo Warranto — Title to Certificate of Nomination to Office.**

A civil action authorized by sections 458 and 459, Comp. Stats. 1921, to obtain relief similar to that anciently obtainable by writ of quo warranto is, by section 6123, Comp. Stats. 1921, made the proper remedy to try the title of one to an already issued certificate of nomination by a political party for public office obtained in a primary election, provided that the relief is sought upon issues which could not have been adequately determined by a recount of ballots authorized by section 6107, Comp. Stats. 1921.

**3. Courts — Original Concurrent Jurisdiction of Supreme Court—When Exercised.**

The original jurisdiction of the Supreme Court, when concurrent with that of the district court, is intended primarily as a "stand-by" service, which it will exercise only when, from the exigencies of the case,

great injury will be done by its refusal so to do. A different rule would so flood this court with original actions as to destroy its efficiency as an appellate court.

**4. Same—Right to Jury Trial.**

This court has never assumed jurisdiction in a case where the district court had concurrent jurisdiction, and where a party thereto was entitled to a jury trial and so demanded, and it will not do so unless the exigencies of the case are such that exceedingly great injustice will be done if this court refused so to do. We shall not vary from this principle merely because one of the members of this court and a Supreme Court Commissioner, his opponent, are involved, but will extend our jurisdiction to the high only as we do the lowly.

Application for leave to file original action in this court by J. H. Jarman against Chas. W. Mason and others. Application denied.

Thos. H. Owen, Geo. S. Ramsey, E. B. Arnold, Chas. G. Watts, and Warren K. Snyder, for plaintiff

Chas. B. Cochran, for defendant Mason.

LYDICK, J. At the primary election held August 5, 1924, J. H. Jarman and Chas. W. Mason and others were candidates for the nomination by the Democratic party for Justice of the Supreme Court of the First judicial district. Upon a canvass of the returns the State Election Board determined that Chas. W. Mason had received a plurality of the votes cast and issued to him its certificate of nomination. J. H. Jarman has filed his application with this court asking leave to institute an original action in this court against Chas. W. Mason and the unsuccessful candidates for such nomination and against the State Election Board and its members to contest the result of such primary election as determined by the State Election Board, tendering the petition which he seeks to file in the institution of such action. In his petition the plaintiff alleges that the official canvass of the election returns as made by the State Election Board is erroneous in certain particulars, which we classify as follows:

(1) That in certain voting precincts the precinct election boards erroneously certified to the number of votes cast for himself and his opponent, Mason.

(2) That, as to one certain voting precinct, the county election board of that county erroneously tabulated the properly certified return made by the precinct board.

(3) That, as to one other certain voting precinct, the precinct election board proper-

ly executed and delivered to the county election board its certificate giving the correct vote received by each candidate, but that after same was received by the county election board someone not named nor designated in the petition fraudulently and illegally changed the figures thereof and that the county election board tabulated the falsified figures. It is not charged that any legally qualified electors were deprived of the right to vote or that unqualified electors were permitted to do so, nor is there any charge of illegal acts other than those above classified. The plaintiff alleges that by each of the errors and changes, the vote he actually received was decreased and that of his opponent, Mason, increased, and that with these errors corrected his vote would entitle him to the certificate of nomination. In his petition the plaintiff makes no charge of fraud or misconduct against his opponent, Mason, and in open court his counsel expressly assert that they do not charge that the alleged fraudulent acts of which the plaintiff complains were committed with the knowledge or consent of the defendant, Mason. The questions determined here are of law only, and no evidence was therefore produced.

We are met at the threshold by objections to the jurisdiction of this court over the subject-matter.

The ancient writ of quo warranto has been obsolete both in England and America for centuries. It was a civil writ, the prerogative of the Crown. Upon its falling into disuse, the remedies which it afforded were for a long time thereafter obtained by an information in the nature of quo warranto. This information was originally a criminal process, likewise the prerogative of the Crown, but in later centuries became recognized as a civil writ. This writ in turn fell into practical disuse in America many decades ago and by statutes in most of the states of the Union the writ of quo warranto has been expressly abolished and it has been by statutes generally provided that the remedies once obtainable by these ancient writs should be had only by an ordinary civil action. Such statutes we had in the territory of Oklahoma from its organization until it became a part of the new state. They now appear as sections 458 and 459, Comp. Stats. 1921.

The Constitution of this state conferred upon the Supreme Court the power to issue, hear, and determine the writ of quo warranto and at the same time it extended into force and effect in the new state the statutes of the territory of Oklahoma above referred to which abolished the writ of quo warranto and provided for the obtaining of the same relief by an ordinary civil action. Both lawyers and jurists in their common parlance are accustomed to referring to proceedings by civil action for the relief formerly obtainable by writ of quo warranto nevertheless as quo warranto proceedings. "The term is used variously to describe proceedings under the common-law writ or under the information in the nature of the writ, **or in the United States to describe similar remedies prescribed by the statute.**" See 32 Cyc., page 1412. We cannot believe that the framers of the Constitution, in giving to the Supreme Court the power to issue, hear, and determine the writ of quo warranto, intended to take us back to the judicial procedure obsolete when Columbus discovered America, for that is where we would go if this constitutional grant of power were strictly and technically interpreted. The Constitution must always be liberally interpreted for the accomplishment of purposes therein reasonably appearing. It must be deemed sufficiently plastic to expand and meet the actual requirements of advanced modern judicial ideas. To give the language of the Constitution such a technical and limited meaning would, in the language of the Supreme Court of the State of Wisconsin, in the case of State v. West Wisconsin R. Co., 34 Wis. 197.

"* * * Take us back for the period of five hundred years or thereabouts to ascertain the class or classes of cases or particular subjects over which jurisdiction was given or intended by the clause of the Constitution under consideration. It requires but a brief study of the history of this branch of the English Law to show the burden assumed by the learned counsel were he to attempt to point out and fix the limits of the jurisdiction thus conferred upon the court; or to show the difficulties by which the court would be surrounded if it were compelled to solve the question and determine the extent of its own powers upon any such view or construction of the constitutional provision. It will be found that the whole subject is so veiled and hidden in the mists and clouds of antiquity that few courts or authors ever essay to give any explanation of it, and that no living lawyer or student, however versed in ancient law, or antiquarian in his legal pursuits and studies, would be competent to unfold the problem or clear up the doubts and uncertainties by which it is on all sides beset. In the first place it will be learned that it is a point beyond the power of human reach or effort to ascertain the time when the writ of quo warranto fell into disuse, and the information became a substitute for it in all cases."

Similar constitutional provisions granting

to the Supreme Court the power to issue the writ of quo warranto have frequently been held not impaired by an act of the Legislature abolishing the writ. Likewise the courts have on frequent occasions held that the grant of the power to issue the writ of quo warranto would be construed to also grant the power to proceed by information in the nature of quo warranto, the theory being that the framers of the Constitution did not intend to move backwards to the technical and cumbersome proceedings of antiquity, but to grant unto the court the power to proceed by the recognized modern method of obtaining the same relief in a less technical and more practical manner. From the same logical reasoning must be deduced the conclusion that our Constitution, in granting to this court the power to issue and determine the writ of quo warranto, confers upon this court the power to entertain jurisdiction of the civil action for the recovery of similar relief, as is authorized by sections 458 and 459, Comp Stats. 1921.

"In American practice the terms 'quo warranto' and 'information in the nature of a quo warranto' are used as synonymous and convertible terms, the object and end of each being the same, the constitutional provisions in several of the states providing for the issuance of writs of quo warranto being construed as authorizing proceedings by information in the nature of quo warranto." 32 Cyc. p. 1415, par. 4. See State v. Leatherman. 38 Ark. 81; People v. Boughton, 5 Colo. 487; People v. Keeling, 4 Colo. 129; State v. Anderson, 26 Fla. 240, 8 South. 1; State v. Gleason, 12 Fla. 190; State v. West Wis. R. Co., 34 Wis. 197.

Neither the ancient writ of quo warranto nor information in the nature of a quo warranto was used to determine the right of one to the nomination of a political party for public office. In many states such right cannot be enforced even by such civil action in the nature of quo warranto proceedings. It is generally so held in the absence of specific legislation to the contrary. In fact, there exists at common law no right to contest in the courts the right to the nomination of a political party for public office. See Lansdon v. State Board (Idaho) 111 Pac. 133; State v. Hatfield (Iowa) 190 N. W. 390; Bradley v. Board (Mich.) 117 N. W. 649; State v. Woodruff (N. J. L.) 52 Atl. 294.

In this state, however, we have a statute, section 6123, Comp. Stats. 1921, which reads as follows:

"All contests arising out of primary elections shall be settled and decided in the same manner as it is now or may hereafter be by law provided for general elections, except as herein otherwise provided."

The civil action authorized by our statutes for the relief formerly obtainable under writ of quo warranto may be maintained "when any person shall usurp, intrude, or unlawfully exercise or hold any public office." See section 459, Comp. Stats. 1921.

We have no further statute authorizing such an election contest against one who has already assumed the duties of the office, and we have held that such action may be maintained only when such person has already assumed the duties of the office. By virtue of the provisions of section 6123, supra, such civil action authorized by section 459 for the recovery of possession of an office unlawfully held by another is applicable equally to a contest of the right of one claiming the nomination of a party for a public office when the certificate of nomination is wrongfully held by another. This we say unless the nature of the contest comes within the exception contained in section 6123, supra, as being one "otherwise provided" for in the statute. Such provision, otherwise, is found in section 6107, Comp. Stats. 1921, which reads as follows:

"Any candidate in a primary election may challenge the correctness of the announced result thereof by filing with the county election board, whose duty it is to canvass the returns in such race, a verified statement setting forth a state of facts which, if true, would change the result in his favor; and thereupon it shall be the duty of such board to inspect and count the ballots questioned by such candidate within ten days after he has filed his affidavit. Such board shall, upon the conclusion of such recount, proceed to certify the result."

It is to be observed that the statute gives to a candidate no definite length of time to file with the county election board his demand for such recount, and it follows, as a matter of law, that the county election board loses its jurisdiction so to do unless such demand be made before the county election board completes its canvass and certifies the result to the State Election Board. See Roberts et al. v. Marshall, 33 Okla. 716, 127 Pac. 703. It was evidently intended by the Legislature that the entire work of the county election board be not unduly delayed by procrastination of a seemingly defeated candidate. See Lansdon v. State Board, supra. If this statute requires too much haste on the part of those desiring to avail themselves of such remedy, the complaint is for the lawmakers and not for us.

It, therefore, appears that, when the only

complaint is that the ballots have not been properly counted, relief may be had by the injured party under this section of the statute, and such remedy is exclusive of all other remedies when same is adequate for the relief sought, and the right to the recount is waived unless same be exercised in time, form, and manner required by the statute It has been generally held that action by quo warranto will not lie where the statute otherwise affords an adequate remedy at law. Smith v. Hall, 28 Okla. 435, 114 Pac. 608; Homesteaders v. McCombs, 24 Okla. 201, 102 Pac. 691; State ex rel. West v. Cobb, 24 Okla. 662, 104 Pac. 361.

It is, therefore, our opinion that neither this court nor the district court should assume jurisdiction in this case as to that class of errors of which the plaintiff here complains in our first classification above, to wit: "That in cerain voting precincts, the precinct election boards erroneously certified to the number of votes cast for himself and his opponent, Mason." It is not even contended that the plaintiff was without knowledge, which he claims here to have, in relation to this class of errors, in proper time to proceed under this section of the statute, nor that the remedy thereby afforded was not adequate in regard to those particular errors. Where it is not charged that by fraud or otherwise the plaintiff was prevented from obtaining a recount of ballots, as authorized by the statute, we must hold that by willful neglect to exercise that right until it is too late for him to do so, he cannot create a right or cause of action in this court which did not otherwise exist.

It is to be observed, however, that the plaintiff alleges that one county election board fraudulently entered upon its return to the State Election Board as to one particular voting precinct figures not appearing upon the precinct election board's return. Relief against this error could not be had by a recount under section 6107, supra. Such relief could be obtained by mandamus except for the reason that the county election board has already completed its canvass of the returns and has certified the result to the State Election Board, which, in turn, has canvassed the returns from the county election board and issued its certificate of nomination to Mason. Necessarily the plaintiff could not know this error in the certification was to be made until it was done, and it was then too late to proceed by mandamus. In the case of Roberts et al. v. Marshall et al., 33 Okla. 716, 127 Pac. 703 this court, speaking through Mr. Justice Hayes, said:

"If the court could compel the board to reconvene and recount a new set of returns certified up to it, the board would have authority to do so without such action of the court; and the result would be that a canvassing board might, from time to time, as new sets of returns might be certified to it, proceed to reconvene and declare a different result from the result declared upon the next preceding canvass, and, as declared by one author, 'render the whole proceeding a farce.'"

We approve this process of reasoning, and therefore find that as to the error upon this point the plaintiff has no relief by mandamus, and a recount of the ballots is unnecessary.

The plaintiff also charges that correctly certified returns from one precinct to one county election board were fraudulently changed after reaching the county election board, and that the falsified figures were tabulated by the county election board. It is not alleged that the county board itself falsified these figures. The county election board has no judicial power. It must canvass the returns as certified to it. It cannot inquire into charges of forged alterations in a certificate coming regularly and lawfully into its possession. The plaintiff is not required by the statute to proceed by a recount to cause this error to be corrected. The precinct board having lawfully certified the correct result to the county election board, the plaintiff has the right to institute such an action as will enable him to prove the alteration made in the original and to thereupon have the certificate corrected and reformed and the returns as then shown thereby to be tabulated.

Under our statutes, as well as in the ancient proceedings by writ of quo warranto and by information in the nature of quo warranto, a civil action for the recovery of an office usurped by another cannot be maintained until such party has actually taken possession of the office. It is, therefore, urged here that this action cannot be maintained because the defendant, Mason, is not in possession of the office by virtue of his certificate of nomination. Such an interpretation would completely nullify section 6123, Comp. Stats. 1921, authorizing such contest to be made and determined according to the law providing for contests in general elections. If the plaintiff were required to wait until Mason should be elected, it could avail him nothing by showing that his nomination had been illegally obtained. So we have held in Roberts v. Marshall, supra.

We must accordingly hold that the action sought to be brought here is a proper one to obtain a correction of the alleged fraud-

ulent act of the county election board whereby it tabulated upon its official records and certified accordingly erroneous figures as the result of the vote in one particular precinct. The action is also the proper one to correct the alleged fraudulently altered certificate of the precinct board to which we have referred. In pursuing the remedy for purposes stated, the court will recount the original ballots only in event such became necessary or material to the purposes for which we have held the action could be maintained.

Having held that the action sought to be brought here is in fact a proper one and that we do have original jurisdiction to entertain it, we turn to determine whether we should assume jurisdiction of the case.

The defendant, Mason, is entitled to a trial by jury in this case. In the case of State ex rel. West v. Cobb, 24 Okla. 662, 104 Pac. 361, we held that in proceedings of this nature to oust one from an office which it is alleged he unlawfully holds, the defendant is entitled to a trial by jury. The only process of reasoning by which we have been able to hold that we have jurisdiction in this case is that section 6123, supra, makes the law relative to contests against one who holds an office applicable to proceedings to oust one who is the holder of the certificate of nomination of a political party for such an office. The same application of the law gives the holder of the certificate of nomination the same right of trial by jury as it gives to one whom the plaintiff is seeking to oust from an office which he already possesses, as the procedure in both cases comes under the same law regulating procedure. In open court counsel for plaintiff was called upon to answer whether the defendant, Mason, would be entitled to a trial by jury, and though repeatedly so called upon by the court to answer, the plaintiff furnished us with neither argument, reason, nor authorities to show he was not entitled to such jury trial. We accordingly reaffirm the rule announced in State ex rel. West v. Cobb, supra, and hold that the right of trial by jury exists in this case. The defendant, Mason, has asked that in event we assume jurisdiction in this case, he be given a jury trial, thereby relieving his associates on this bench from the primary duty of determining the issues of fact.

Our Constitution affords to every litigant the right of appeal to this court from the judgment of all courts of original jurisdiction in every civil case at law or in equity, regardless of the amount involved. The Supreme Court was, by the Constitution, intended primarily as a court of civil appeals. Exercising, as well as appellate jurisdiction, also a superintending control over all inferior courts, it is necessary that this court have original jurisdiction to issue writs of mandamus, prohibition, and certiorari, and when such writs are necessary for the purposes stated, this court will unhesitatingly cause them to issue. The trial of title to office is but a small part of the functions of a civil action for the relief formerly obtainable by writ of quo warranto, as same often involves the direct interests of the sovereign state. The interests of the sovereign state are always paramount and are often best served by an action instituted in the first instance in this court, and it is, therefore, very fitting and proper that the organic law should confer original jurisdiction in such instances upon this court; but it would be impossible to write a constitutional provision which would automatically distinguish and classify such cases with certainty in all instances. The original jurisdiction of the Supreme Court, when concurrent with that of the district court, is intended primarily only as a "stand-by" service, to be exercised only when consistent with the theories above announced, or when, from the exigencies of the case, great injury will be done by the failure of this court to exercise that original jurisdiction. Although a strict and liberal interpretation of the Constitution gives us a broader grant of power, we will attempt to assume original jurisdiction only when consistent with the announced theories which we believe were intended by the framers of the Constitution and which we are sure it is necessary to observe if the functioning of this court as an appellate tribunal is not to be most seriously impaired. The Supreme Court of Kansas, in Re Burnette, 85 Pac. 575, says:

"It would be entirely impossible for the Supreme Court to hear and decide controversies generally arising within the state upon their merits, and if any considerable number of them were to be heard anew, little opportunity would remain for the performance of the true functions of an appellate court."

Due process of law and equal protection of the law require that to all litigants with the same class of cases and under the same circumstances shall we extend the original jurisdiction of this court. The decision which we shall here render is of greatly more importance as a precedent by which the rights of parties in the future may be measured than the effect it may have up-

on the interests of the litigants in this particular case.

Admittedly the district court has original jurisdiction in this case and it has power to grant adequate relief. Under the rules announced we must not assume original jurisdiction here unless great injury will be done by our failure to do so. Plaintiff says such will be the result. He says he will not have time to complete a trial of the issues in the district court in time to appeal to this court and get a determination thereof before the November election. If he is correct in his alleged cause of action, perhaps his opponent should be the one to worry over that condition. He complains before injury is apparent. If his evidence is so voluminous and his witnesses are so numerous that in the three months' time elapsing between the primary election and the general election he cannot possibly try the issues involved in the district court in time for him to exercise his right of appeal to this court before the general election, then such facts constitute strong reasons for our refusal to assume original jurisdiction here. This court will not convert itself from an appellate court of last resort into a nisi prius court, impanel a jury, and for weeks have its nine Justices sit en banc in examination of witnesses, and during all of said time hold in abeyance a thousand litigants with cases now before us on appeal to try the issues in this single case involving a party nomination for a single office. This court has never impaneled a jury and has never conducted such a trial on contested questions of fact where the district court had concurrent jurisdiction. However, we are of the opinion that a very few days' time would be adequate in the trial of this case before a jury. We decline to accept as apparently evident the statement of the plaintiff that this case cannot be tried in the district court in ample time for the disposition of an appeal therefrom in this court before the November election. The plaintiff's petition contains no allegation of illegal voting nor the deprivation of legal voters of the right to exercise that franchise. Under the allegations of the petition no proof would be competent and material except an inquiry into the alleged falsification of the return of one precinct board, the retabulation of the returns made by the county election boards, and possibly a recount of the ballots. Such a trial necessarily would not consume any exceedingly great length of time. Already a month has elapsed since plaintiff discovered the cause of action which he here asserts, and had he exercised only ordinary diligence, he could have had the issues in his case made up in the district court and as he here stands before us could be trying the facts in that court. This court, with its superintending power over the district court, would at all times be standing by to cause the district court, if it hesitated, to proceed with that degree of rapidity to which such a proceeding is necessarily entitled. Upon reaching this court upon appeal we have never hesitated, and never will, to advance and so quickly determine any cause before us as to reach a conclusion in the time necessary to make its judgment an effective one. Although the ballot should already be printed, with the defendant Mason's name thereon as the Democratic nominee, the name of the plaintiff here could be quickly substituted therefor by stickers pasted thereon, under the provisions of our statutes applicable in just such cases. On the first day of August, 1924, four days before the primary election, there came to this court an appeal from the judgment of a district court in a case involving the completion of the registration rolls in a county, and the decision of this court, if it were to be effective in the primary election needed to be immediately rendered. Such case this court advanced and heard upon the day it was filed, considered the same, rendered its opinion and entered its judgment upon the same day. There is no reason to support the contention that the plaintiff's rights will be jeopardized in this case by our refusal to assume original jurisdiction, unless the plaintiff himself negligently fails to exercise ordinary diligence in the protection of his rights.

Upon oral argument it was stated that some years ago this court had assumed original jurisdiction in two election contests. From an examination of the records we found that the right of a jury trial was waived in both of these cases, the matter referred to a referee by agreement, and the cases thereafter dismissed without trial by the plaintiffs themselves. The question of whether the court should assume jurisdiction, even if it had jurisdiction, was not raised by the parties, and no decision on the questions here determined was apparently made, as no opinion was written by the court in either case. The effect of the court's order in these cases can, therefore, go only to the result in those particular cases and constitutes no binding precedent here.

If we assume original jurisdiction in this election contest, then, as a matter of principle, we must assume original jurisdiction in all contests over the nominations for

public office which may be brought to us, and in such event, practically all such cases will immediately be brought to our door. Then, in each election year from August to November, this court will be converted into one for the original hearing of election contests only, and after the general election, the contests over the results thereof in the various counties of the state.

The year round, other actions for relief in the nature of quo warranto, not always involving public office, will be brought to us in the first instance, and must follow the precedent which we here establish. The appellate work of this court will become demoralized, and while the litigants ·in the class of cases which we are here discussing can obtain adequate relief in the district court, litigants with cases here on appeal will, by the delay thereby occasioned, be in fact deprived of property without due process of law, for there is no other court of appeals to which they can go.

**Not even will we permit the Legislature to so unnecessarily overload this court with original jurisdiction which can as well be effectually exercised by the district court as to too seriously impair the ability of this court to perform its constitutional duties· in the exercise of appellate jurisdiction.** There are annually brought before this court on appeal more cases than are brought before a single appellate court of last resort in any other state in the Union. This is partly due to the fact that we have no intermediate court of appeals where many appealed cases end, as there exists in many other states, and the further fact that there is no limitation whatsoever in this state on the class of cases that can be appealed to this court. We have fifteen Commissioners under us writing opinions. These Commissioners are wholly without authority to decide a case, and cases are assigned to them without regard to their importance. We must review all their opinions, and when we approve them, we adopt them as our own and ourselves decree the relief by them merely recommended, thereby assuming the moral as well as the legal responsibility for the rules of law therein announced and the application there made. Under conditions now existing we cannot give these opinions half the time they deserve. Oral arguments in appellate cases consume a very substantial part of our time, while another great portion thereof must be given to consideration of cases originally brought here

wherein the district court is wholly without jurisdiction. As matters now stand, the Associate Justices can scarcely devote one-third of their time to the study of appealed cases to them assigned and writing opinions therein. It, therefore, remains not a very difficult problem in mathematics to determine just about how much time each Associate Justice can devote to the study of the opinions written by other Justices. This court is now handing down opinions in cases written by the Justices themselves in number comparing favorably with appellate courts of last resort who are not so burdened with other work; and including the Commission's opinions, which we examine and make our own, we are handing down opinions more rapidly than any other appellate court of last resort in .America. Nevertheless, we are unable now to keep up to date with the appellate work. The conditions surrounding this ·court must not be aggravated. We cannot add hours to the day, but we can somewhat curtail the assumption of original jurisdiction by refusing to assume jurisdiction where adequate relief may be had elsewhere.

Naturally, all litigants would like, in the first instance, to step into this court of last resort, thereby avoiding the expense and delay incident to appeal, but the interests of the whole people of the sovereign state are paramount to those of the individual litigants in a single case. This court must not be led too far astray from its appellate work, as this court was by the framers of the Constitution intended primarily as an appellate court. The conditions enumerated have demanded our most serious consideration of the precedent which, by this decision, we shall establish.

We shall not vary from this principle merely because one of the members of this court and his opponent are involved, but will extend our jurisdiction to the high only as we do to the lowly.

For reasons stated, we decline to assume jurisdiction in the case and it is so ordered.

· McNEILL, C. J., and JOHNSON and GORDON. JJ.. concur. HARRISON, J., concurs in denial of application, but is of the opinion that this court is wholly without jurisdiction in the matter. NICHOLSON and WARREN, JJ., dissent. MASON, J., was disqualified and did not participate in the consideration of the case.