Donovan E. WELCH, Jr., and Harry W. Gibson, Jr., Plaintiffs,

v.

George D. KEY, Paul G. Darrough, Jr., and Leo Winters, Defendants.

No. 39812.

Supreme Court of Oklahoma.

Sept. 11, 1961.

M. A. (Ned) Looney, Robert D. Looney, O. A. Cargill, Sam Crossland, Oklahoma City, for plaintiffs in error.

Leo Winters, George D. Key, Paul G. Darrough, Jr., Oklahoma City, for defendants in error.

Jefferson G. Greer, Frank A. Greer, Tulsa, Douglas McKeever, Enid, amicus curiae.

IRWIN, Justice.

At issue in this proceeding is the power and authority of the Governor to appoint two individuals to the State Election Board, whose names were not included in the lists submitted to the Governor by the two State Central Committees of the two dominant political parties.

Plaintiffs, Donovan E. Welch, Jr. and Harry W. Gibson, Jr., who were appointed by the Governor, commenced this original proceeding under a petition for writ of mandamus and for relief in the nature of quo warranto and other relief as to this Court may seem just. Relief is sought against Leo Winters, Secretary of the State Election Board, who, it is alleged, has attempted to interfere with the lawful exercise of the State Election Board. Relief is also sought against Paul G. Darrough, Jr. and George D. Key, who, it is alleged, have unlawfully held and are attempting to exercise the office of Board Members of the Oklahoma State Election Board.

Plaintiffs contend that they (plaintiffs) were duly appointed and qualified to hold the office as members of the State Election Board on September 1, 1961, by virtue of Executive Orders issued on September 1, 1961, by the Chief Executive; that they took their oaths of office and qualified in all respects on September 7, 1961, and are now the legal and duly qualified members of the State Election Board.

Plaintiffs request this Court to declare them (Welch and Gibson) to be the legal, duly qualified and appointed members of the State Election Board and to restrain and enjoin the defendants Key and Darrough from unlawfully holding or attempting to exercise any duties as members of the State Election Board. Plaintiffs further request that defendant Winters be restrained and enjoined from unlawfully failing to carry out the orders and directions of the majority of the State Election Board as defined by law.

Defendants' response denied that plaintiffs are entitled to the relief prayed for, but admit that the instant action is one in which this Court may properly assume original jurisdiction.

All the parties stipulated to the following facts:

That Paul G. Darrough, Jr., and George D. Key were appointed to the office of Member of the Oklahoma State Election Board on the 22nd day of June, 1959, and thereafter qualified for the office. They served the duration of their term which expired January, 1961. Subsequent to that time they continued to serve as hold-over members of the Board as de jure officers. They served as such until September 7, 1961, at 10:30 A.M. Defendants contend that they continued to serve and still are serving, and are the legally constituted members of the Board. Plaintiffs contend that on the September 7, 1961, date and time they then were no longer legally constituted as such.

It is further stipulated that Paul G. Darrough, Jr., was a qualified elector of the Republican Party during the time of his appointment and tenure, and that George D. Key likewise was a qualified elector of the Democratic Party during the said time.

It is further stipulated that the two dominant political parties of the State of Oklahoma submitted a list of five names to Governor J. Howard Edmondson pursuant to the Statutes and Laws of Oklahoma, and conformed to the Statute and laws in so doing.

It is further stipulated that neither of the plaintiffs, Welch nor Gibson, were on either of the said lists. Governor J. Howard Edmondson appointed

Welch and Gibson on September 1, 1961, as reflected in plaintiff's exhibit to petition, and Welch and Gibson did take the oaths prescribed by statute on September 7, 1961, at 10:30 A.M., after which the oaths and appointments were duly filed and recorded.

It is further agreed that both Welch and Gibson are qualified electors of the Democratic and Republican Parties of Oklahoma respectively, and that these two parties are the two dominant political parties of this State.

It is agreed that the issue here is:

Which of the four men, Welch, Gibson, Key or Darrough, are the legally qualified and duly constituted members of the State Election Board?

It was stipulated in oral argument that the names of defendants Key and Darrough were included in the lists of names submitted to the Governor for appointment by their respective State Central Committees.

All of the parties involved herein are well known to be outstanding citizens in their respective communities and the State of Oklahoma and their ability and integrity are above question. The list of names submitted by the respective State Central Committees has not been presented to the Court. However, the ability or integrity of any of the individuals listed therein, has not been questioned. We therefore do not have before us the question of qualification of any of the litigants or that of the individuals whose names were submitted by their respective parties.

Article VII, Sec. 2, of the Constitution of Oklahoma provides, inter alia, that, "The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have the power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition, and such other remedial writs, as may be provided by law, and to hear and determine the same * * *".

Title 12 O.S.1951 § 1532, which relates to grounds for action in the nature of quo warranto, provides:

"Such action may be brought in the Supreme Court or in the district court, in the following cases:

"1st. When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, * * *".

In Jarman v. Mason, 102 Okl. 278, 229 P. 459, we held:

"The Supreme Court has original jurisdiction in a civil action brought under the provisions of sections 458 and 459, O.S.1921, to obtain relief similar to that anciently obtained by writ of quo warranto".

Therefore this Court does have jurisdiction of the persons and subject matter involved herein and due to the grave public concern and necessity that speedy relief be granted or denied, we have assumed original jurisdiction.

### Proposition I

Does the Legislature Have the Power and the Authority to Restrict the Governor's Selection and Appointment of Members of the State Election Board to the Lists of Names Submitted by the State Central Committee of the Two Political Parties Casting the Highest Number of Votes at the Last General Election of State Officers?

Article III, Sec. 4 of the Constitution provides:

"The Legislature shall enact laws creating an election board. * * *"

The power to create a board carries with it the right to determine how the members of the board shall be selected and appointed. In Riley v. State ex rel. Daniel, 43 Okl. 65, 141 P. 264, the right to delegate to the Oklahoma State Senate the authority to appoint a Secretary of the State Senate, who is also Secretary of the Election Board, was challenged. It was contended the Legislature cannot create an office and then fill the office or appoint the person who is to discharge the duties of the office created

by the Legislature. It was argued that this would be repugnant to Article VI, Sec. 13, of the Constitution, which provides, "The Governor shall commission all officers not otherwise commissioned by law. * * ". This Court denied this contention and held:

"That part of Section I of Chapter 157, Session Laws 1913, passed by the extra-ordinary session of the Fourth Legislature which provides that 'The Secretary of the State Senate shall be the Secretary of the State Election Board, is not repugnant to that part of section 13, article 6, of Williams Ann Constitution of Oklahoma, which provides that the Governor shall commission all officers not otherwise commissioned by law!"

In the body of the opinion it is stated:

"It is true that under our Constitution and laws, the duty of commissioning public officers mainly devolves upon the Governor, but that situation arises out of the fact that there are a great many 'officers not otherwise commissioned by law,' who under the Constitution must be commissioned by the Governor, *and not out of any inherent* power of appointment possessed by the Governor by virtue of his office." [43 Okl. 65, 141 P. 264, 265]

We can see no reason why the same construction should not be applicable to the two members of the board, other than the Secretary.

If the Legislature could not enact restrictive or selective provisions which provide for the selection and appointment of members of the State Election Board for the reason the same would be in contravention of the Constitution which prescribes the "Governor shall commission all officers not otherwise commissioned by law," is there any reason why the same Constitutional restriction would not also be applicable to all election officials?

The plaintiffs have cited several other Constitutional provisions, but we fail to find any which the Legislative Act under consideration contravenes. We therefore hold that the Legislature does have the power and authority to restrict the Governor's selection and appointment of the members of the State Election Board as set forth in Title 26 O.S.1951 § 12.

Proposition II

If the Governor Exercises His Power and Authority to Select and Name Two Members of the State Election Board, May the Governor Select and Name a Member of the Board Whose Name Is Not On the List Under the Facts Presented Herein, Where the State Central Committees of the Two Political Parties Casting the Highest Number of Votes at the Last General Election of State Officers, Timely Select and Present Lists and Request the Governor to Name One from Each List Which Shall Be the Representation to Be Accorded to Its Party upon the State Election Board.

■ We are of the opinion that an examination of all pertinent statutes reveals a clear Legislative intent to limit the Governor's appointive powers.

Article III, Sec. 4, of the Constitution of Oklahoma provides:

"The Legislature shall enact laws creating an election board (not more than a majority of whose members shall be selected from the same * * * party), * * *."

Pursuant to the Constitution, the Legislature enacted the necessary laws creating the State Election Board and provided that such board shall always consist of three members. Title 26 O.S.1951 § 12. Certain statutory provisions were enacted which relate to the appointment of the Secretary of the State Election Board. However, since defendant Winters is the present Secretary and his legal qualifications to serve as such are not challenged, we will consider only those Legislative enactments which relate to the appointment of the other two members:

Title 26 O.S.1951 § 12, provides:

"Membership of State Board—Recommendation by political parties.—

The State Central Committee of the two political parties casting the highest number of votes at the last general election for state officers shall have the privilege of selecting and presenting to the Governor, during the first thirty days after the passage of this act, the name of as many as five electors from which said committee may request the Governor to name one which shall be the representation to be accorded to its party upon said election board, and every two years thereafter such State Central Committee shall have the privilege of selecting and presenting to the Governor such lists of five electors for the purpose aforesaid; provided, such lists be presented to the Governor not later than ten days after the second Monday of January, 1915, and each two years thereafter. *When the State Central Committee of a political party so submits a list of electors, the Governor may select one which shall be the representation allowed such political party, from such list.* Such appointment shall be made one each from the two dominant political parties by and with the advice and consent of the Senate. If any political party fail or refuse to submit a list of nominees as herein provided, the Governor may, notwithstanding such failure or refusal, appoint a representative of such party to membership upon the State Election Board. The State Election Board shall always consist of three members. Laws 1913, ch. 157, p. 316, § 4." (Emphasis ours.)

Plaintiffs contend that this sentence in the above provision, "When the State Central Committee of a political party so submits a list of electors, the Governor *may* select one which shall be the representation allowed such political party, from such list," grants to the Governor the power and authority to appoint a member of the State Election Board whose name is not on the list, rather than selecting and naming someone on the list.

An analysis of the entire section discloses that if a State Central Committee of a dominant political party desires to submit a list to the Governor it must do so not later than ten days after the second Monday of January, 1915, and each two years thereafter. It is not mandatory that a State Central Committee submit a list, but in the instant proceeding, the State Central Committees of the two dominant political parties exercised their privileges and each timely submitted a list to the Governor and requested him "to name one which shall be the representation to be accorded to its party upon said election board." Each party is entitled to at least one member on the board and by the express language of the statute, each party has the privilege of timely submitting a list of names to the Governor, and may request him to name one which *shall be the representation to be accorded to its party upon said election board.*

The next to the last sentence in the enactment provides that, "If any * * * party fail or refuse to submit a list of nominees as herein provided, the Governor may, notwithstanding such failure or refusal, appoint a representative of such party to membership upon the State Election Board." Without question, this grants the Governor the power to select and name the representative of a party to the board when that party has not submitted a list.

Does the use of the language *may select* in the sentence relied on by the plaintiffs also grant such power to the Governor? We do not construe such language to grant such power or authority as the sentence specifically states, " * * * *may select one * * * from such list*". There are no words or expressions whatsoever, granting the Governor the power or authority to make a selection other than from such list under the facts presented in this proceeding.

The words *"may select one"* in so far as discretionary authority is concerned, relate to only one thing and that is, if the Governor wants to make a selection, he

may; if he does not want to make a selection, the statutes do not require him to do so. This is borne out by an analysis of previous Legislative enactments, which provided if a political party were authorized to submit a list and the statutes provided the Governor *"shall select one * * * from from such list,"* the statutes also provided that the Governor *shall* appoint the members of the State Election Board within a certain time. In this connection, the 1913 Legislature, by enactment of Sec. 6, Session Laws 1913, page 317, specifically repealed that portion of House Bill No. 27, 1911 Session Laws, Sec. 2a, page 225,which required the Governor to appoint the State Election Board within a certain time. Therefore, if the 1913 act had provided *"shall select * * * from such list"* in lieu of *"may select * * * from such list"*, ambiguity and uncertainty as to whether or not it was mandatory to make a selection would have been presented. We can only conclude that the words *may select* relate only to the permissive authority of the Governor to appoint members of the State Election Board if he so desires, and does not relate to his discretion as to whom he may appoint.

■ To place a different construction on such language would give "suggestive" effect only to all that portion of the statute relating to the submission of the lists by the two political parties; the proviso that if any political party failed to submit a list, the Governor may appoint a representative of such party would have no meaning for the reason the Governor would have the power to appoint whomever he chose although a list were submitted. The true office of a proviso is to restrict or make clear that which has gone before. See Jumper v. Lyles, 77 Okl. 57, 185 P. 1084; In re Frary's Estate, 186 Okl. 126, 96 P.2d 526. In the instant case the proviso not only prescribed the power of the Governor if State Central Committee failed to timely submit a list but it also restricted and made clear that if a list were timely submitted and the Governor chose to exercise his power of appointment, it was incumbent upon him to select from the lists submitted.

This construction is in harmony with the specific provisions of Title 26 O.S.1951 § 55, which provide that if a vacancy occurs it *shall* be the duty of the Governor to fill by appointment such vacancy and he *shall make the selection* from the ranks of the political party to which the appointee's predecessor belonged, and *from the list of names* last recommended by the State Central Committee of such party.

We therefore hold that the appointments of plaintiffs Welch and Gibson were contrary to the provisions of Title 26 O.S.1951 § 12.

Inasmuch as the appointments of plaintiffs Welch and Gibson were not made as provided by law and such law does not contravene the Constitution of Oklahoma, we hold the appointments of plaintiffs Welch and Gibson were ineffective and they are not the legal and qualified members of the State Election Board.

Writ denied.

BLACKBIRD, V. C. J., and DAVISON, HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.

WILLIAMS, Chief Justice (concurring specially).

The 1908 act provided, "When the State Central Committee of a political party so submits a list of nominees, the Governor shall select the representation allowed such political party, from such list."

The 1913 act, with respect to that subject, provided, "when the State Central Committee of a political party so submits a list of electors, the Governor may select one which shall be the representation allowed such political party, from such list. Such appointment shall be made one each from the two dominant political parties by and with the advice and consent of the Senate."

From this change, it is arguable that the intention of the Legislature, as expressed

in the 1913 Act, was to change from mandatory requirement upon the Governor to a persuasive suggestion to him.

However, to be emphasized, in this regard, I believe, is the first part of the first sentence of the 1913 section in question. Therein it is stated: "The State Central Committee of the two political parties casting the highest number of votes at the last general election for state officers shall have the privilege of selecting and presenting to the Governor, during the first thirty days after the passage of this act, the name of as many as five electors, from which said committee may request the Governor to name one which shall be the representation to be accorded to its party upon said election board, and every two years thereafter such State Central Committee shall have the privilege of selecting and presenting to the Governor such lists of five electors for the purpose aforesaid;"

It appears to me that the Legislature there was saying that if the Chief Executive should decide not to permit the old members to hold over under Article XXIII, Section 10, of the Constitution, (which provides in part as follows: "That all officers within this State shall continue to perform the duties of their offices until their successors shall be duly qualified."), that he may then appoint one member of the State Election Board from each of the two dominant party lists submitted, "which *shall* be the representation to be accorded to its party upon said election board." This to my mind, made it mandatory in 1913, that if former members were not permitted to continue as members, they *had* to be selected from the named lists.

Such Act further provides that "every two years thereafter such State Central Committee shall have the privilege of selecting and presenting to the Governor such lists of five electors *for the purpose aforesaid; * * *.*"

Therefore the same mandatory character of said statute obtains to date.

I therefore respectfully concur specially.